2002 SD 127

**DENVER TRUCK AND TRAILER SALES, INC. d/b/a Volvo Trucks of Colorado, Inc., Plaintiff and Appellant,**

v.

**DESIGN AND BUILDING SERVICES, INC., Defendant and Appellee.**

No. 22256.

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Oct. 9, 2002.

Brett A. Lovrien of Parliman and Parliman, Sioux Falls, for plaintiff and appellant.

Martin Oyos of Christopherson Bailin & Anderson, Sioux Falls, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Volvo Trucks of Colorado Inc., apparently a subsidiary of Denver Truck and Trailer Sales, Inc., a South Dakota corporation (Volvo Trucks),* brought this suit in South Dakota against Design and Building Services Inc. (Design), a Colorado corporation. Volvo Trucks claims damages for breach of contract and warranty, tortious interference with a contract and with a prospective business advantage, and negligence. Volvo Trucks also asserts that Design improperly filed a materialman's lien. Design entered a special appearance through its president, Kenyth Fausz

---

* Confusion in the names, the relationships, and the actions of the entities runs throughout the briefs. The preliminary statement of Appellant's brief refers to "Appellant, Volvo Trucks of Colorado, Inc., Plaintiff ..." On the next page in the statement of the case and facts, it provides "Volvo Trucks, a South Dakota corporation, filed a Complaint ..." In fact, the Complaint was filed by Denver Truck and Trailer Sales, Inc., d/b/a Volvo Trucks of Colorado, Inc. No mention is made of North American Truck and Trailer Inc., a South Dakota corporation.

Appellee's brief asserts in its statement of the case that Denver Truck and Trailer Sales Inc. operated as Volvo Trucks of Colorado Inc. In Appellee's statement of the facts, it asserts that Denver Truck is a South Dakota corporation operating in Colorado as a subsidiary of North American Truck and Trailer, Inc., a South Dakota corporation.

(Fausz), to contest personal jurisdiction. On September 25, 2001, the circuit court entered an order dismissing the complaint for lack of personal jurisdiction.

[¶ 2.] Design conceded that South Dakota's Long Arm Statute, SDCL 15–7–2, is sufficient for the assertion of jurisdiction. However, the circuit court held, and Design argues that this application of the Long Arm Statute would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We affirm.

## FACTS

[¶ 3.] Based upon the recommendation of a third party, Volvo Trucks contacted Design to determine whether Design could remodel Volvo Trucks' building in Colorado. The parties eventually entered into a construction contract which was executed and to be performed in Colorado. The form contract provided by Design identified Volvo Trucks by the name "Volvo GM Heavy Truck Corporation," and the address listed for Volvo Trucks was in Sioux Falls, South Dakota. However, William Rush (Rush), president of Volvo Trucks, amended the face page of the contract to show his company's name as "Volvo Truck of Colorado, Inc."

[¶ 4.] The parties met approximately once a month to discuss the progress of the remodeling and all of the meetings took place in Colorado. Design received its periodic payments on the contract from Volvo Trucks' office in Colorado, the checks being imprinted with Volvo Trucks' Colorado address and made payable through a bank in Montana.

[¶ 5.] This suit arose over an agreement that Design would replace the concrete floor in the shop area of Volvo Trucks' building. Design did replace the floor, but not to the satisfaction of Volvo Trucks. The floor began cracking and breaking almost immediately after its installation in October of 2000. Design intends to join a Denver, Colorado engineering firm as a third party defendant based on the advice Design received from the firm regarding the floor installation.

[¶ 6.] The parties never came to an agreement regarding liability for the defective floor, and Volvo Trucks refused to pay the final installment on the contract. Consequently, in September 2000, Design's Colorado attorney contacted Rush in South Dakota and indicated that if full payment was not made on the contract and a limited release was not signed by Volvo Trucks, Design would file a materialman's lien on the building. At the time of that communication, Volvo Trucks was in the midst of negotiations to sell the building. Eventually, Volvo Trucks satisfied the materialman's lien and sold the building for $100,000 less than originally anticipated. Volvo Trucks asserts that the threat to file and the filing of the lien constituted a tortious interference with the contract between Volvo Trucks and the prospective buyer, and tortious interference with a prospective business advantage. Based on the interference claims and the alleged breach of contract, Volvo Trucks filed suit in South Dakota.

## STANDARD OF REVIEW

[¶ 7.] This case presents issues of fact and law. Findings of fact are reviewed under the clearly erroneous standard, meaning, "findings of fact will not be disturbed unless the court is 'firmly and definitely convinced a mistake has been made'." *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771 (quoting *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D. 1995)). Conclusions of law are reviewed de novo, with no deference given to the trial court's conclusions of law. *Schwe-*

*bach,* 1997 SD 4, ¶ 8, 557 N.W.2d at 771 (citing *Jasper,* 540 N.W.2d at 401).

## [¶ 8.] WHETHER THE TRIAL COURT ERRED IN DISMISSING VOLVO TRUCKS' SUIT FOR LACK OF PERSONAL JURISDICTION.

■ [¶ 9.] The inquiry into whether a court may assert personal jurisdiction over a nonresident defendant is two-fold. First, the court must determine whether the legislature granted the state court jurisdiction over defendants who do not meet the traditional bases for personal jurisdiction. In South Dakota, this legislative approval is found in the state's Long Arm Statute. SDCL 15-7-2 ("Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing . . . of any of the following acts: (1) the transaction of any business within the state . . ."). Next, the court must determine whether the proposed assertion of jurisdiction comports with federal due process requirements.

■ [¶ 10.] Design agreed with the circuit court's finding that there were contacts under the Long Arm Statute, and that the statute is construed broadly. Therefore, we proceed to determine whether personal jurisdiction exists under the Due Process Clause. This inquiry requires the Court to determine whether Design had sufficient minimum contacts with the forum such that the assertion of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). (citations omitted).

[¶ 11.] This Court previously discussed the standard for determining whether a defendant has sufficient minimum contacts to support personal jurisdiction:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Ventling v. Kraft,* 83 S.D. 465, 161 N.W.2d 29 (S.D.1968). Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one. An important factor bearing upon the reasonableness of asserting jurisdiction is to determine if defendant's conduct and connection with the forum state are such that he would have reasonably anticipated being brought into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

*Opp v. Nieuwsma,* 458 N.W.2d 352, 355–56 (S.D.1990).

[¶ 12.] Volvo Trucks asserts several contacts between Design and South Dakota that it believes are sufficient to prove that Design "purposefully availed" itself of "the privilege of doing business" in South Dakota. Specifically, it argues:

1) negotiations and modifications to the contract occurred in South Dakota;

2) the contract identified Volvo Trucks' address as South Dakota, thus giving Design notice that it was contracting with a South Dakota corporation;

3) Design made telephone calls to South Dakota;

4) portions of the contract were signed in South Dakota;

5) the trailer which was used to pay a portion of the purchase price was delivered from South Dakota and remained titled in South Dakota; and

6) the rest of the payments on the contract were sent from the South Dakota office to Volvo Trucks to be signed and delivered in Colorado.

The factual bases of these arguments and their effect are disputed at least as far as 1, 3, 4, 5, and 6.

[¶ 13.] The place of performance and execution of this contract was Colorado. The portions of the contract that Volvo Trucks asserts were executed in South Dakota consist of six change orders faxed to Rush in South Dakota from Colorado. Of those six orders, three were signed by both Rush and Fausz. Those change orders represented less than $6,000.00 of a $750,000.00 contract. Additionally, well over sixty other change orders were discussed, signed and presented to Rush in Colorado. Nothing in the record indicates that any substantive negotiations took place in South Dakota.

[¶ 14.] The communication between the parties that took place in South Dakota was likewise more minimal than "minimum contacts" requires. Design presented phone records indicating six telephone calls that Fausz made to Rush in South Dakota. Of those phone calls, five were to Rush's cellular phone and four of them were billed for only one minute, indicating that although a call was attempted, contact was never actually made. Further, although the phone number had the South Dakota area code, because it was a cellular phone, Fausz had no idea where Rush actually was at the time of the call. There was one cellular call lasting approximately eleven minutes, and one ground line phone call lasting approximately five minutes. The record reveals one letter sent from Design to Volvo Trucks in South Dakota.

[¶ 15.] When Volvo Trucks learned that one of the charge items in the contract was a trailer for Design's use as an office, it offered to sell its own trailer to Design.

The parties agreed to a purchase price of $5,000.00 which was subtracted from the contract price. At the time of the purchase, the trailer was located in Denver, but it was titled in South Dakota. Volvo Trucks alleges that this transaction constitutes a "contact" under the due process analysis, but this transaction is also insufficient to support jurisdiction. First, the transaction is unrelated to Volvo Trucks' cause of action. Second, "mere purchases . . . are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404 (1984) (citing *Rosenberg Bros. & Co., v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923)).

[¶ 16.] As indicated above, although the checks used for payments to Design may have originated in Sioux Falls, they were received by Design from Volvo Trucks' office in Colorado. Further, the checks themselves made no mention of South Dakota but only referred to Colorado and Montana. Based on the checks alone, Design had no notice that they were being paid either from South Dakota or by a South Dakota Corporation.

[¶ 17.] Volvo Trucks next contends that its cause of action arose from Design's activities directed at South Dakota. The activities at issue are breach of the construction contract, the exchange of the trailer for a reduction in the contract price, and Design's threat to file and the filing of a lien on the property. The claim for breach and negligence are directly related to the contract which was created, executed and performed in Colorado. The alleged breach and negligence both refer to the subject matter of the contract—property located in Colorado. These two

causes of action cannot be said to arise from Design's activities directed at South Dakota. Rather, both were directed specifically at Volvo Trucks' property located in Colorado and at the contract which, as discussed above, had insufficient contacts with South Dakota.

[¶ 18.] Volvo Trucks also argues Design specifically targeted South Dakota by calling Rush to threaten a materialman's lien on the property Design had remodeled. However, as Design points out, the subject of the threatened lien was the property located in Colorado. Such a lien operates directly on the property and was targeted at Colorado, not South Dakota. A finding of personal jurisdiction on the basis of an alleged tort aimed at the forum state requires that the court find that defendant intentionally directed its tortious activities at the state. *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). First, there was no finding of tortious activity, and there is no indication from the record that such a finding was or could have been made. Finally, the mere fact of threatening a materialman's lien on property located in Colorado is insufficient to support a finding that Design could have reasonably anticipated being "haled into court" in South Dakota.

[¶ 19.] The final consideration is whether the assertion of jurisdiction would be reasonable under the circumstances. The court must consider, "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" and the interest of other states in securing the most efficient resolution of controversies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987) (citing *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564).

[¶ 20.] In addressing the reasonableness of asserting jurisdiction, it is significant that all of the key activities took place in Colorado. This was the site of execution, performance, meetings, payment, and the subject matter of the contract. Further, the vast majority of witnesses in the action are located in Colorado, all of the relevant evidence is located in Colorado, and the potential third party defendant is also based in Colorado. Finally, Colorado has an interest in determining the issue of whether Design's reliance on its attorney's advice is a sufficient defense to Volvo Trucks' allegations of tortious interference.

[¶ 21.] "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)) (emphasis in the original). " 'Some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 528 (quoting *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159) (citation omitted).

[¶ 22.] Here, Design's actions were neither directed at South Dakota or its residents nor were they sufficient to put Design on notice that it could be called to South Dakota to defend itself in litigation. Based on Rush's continual contact and activity in Colorado, the name of his corporation as he amended it on the contract, and the substantial amount of activity occurring in Colorado, it was not reasonably foreseeable to Design that it would be called into court in South Dakota. Finally,

there were no acts by the defendant itself which created a substantial connection with South Dakota.

■ [¶ 23.] The record does not support Volvo Trucks' contention that there were sufficient contacts between Design and South Dakota. The "purposeful availment" requirement operates to ensure that nonresident defendants are not "haled into a jurisdiction 'solely as a result of random, fortuitous or attenuated contacts'." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). The contacts between Design and South Dakota, taken as a whole, are too attenuated to support jurisdiction.

[¶ 24.] The United States Supreme Court has stressed that those who contract with a citizen in another state may be subject to the laws of that state for the consequences of their activities. *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182, 85 L.Ed.2d 528. Nevertheless, the Court has also emphasized that application of this rule varies depending on the "nature and quality of defendant's activity" in the forum. *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239–40, 2 L.Ed.2d 1283. Despite Volvo Trucks' assertion to the contrary, the mere fact of an interstate contract is not alone adequate to establish sufficient minimum contacts. *Burger King,* 471 U.S. at 478, 105 SCt at 2185. Analysis of the alleged contacts between Design and the forum fails to support the contention that those contacts taken alone or as a whole are sufficient. For these reasons, we affirm.

[¶ 25.] GILBERTSON, Chief Justice, and AMUNDSON, KONENKAMP, and ZINTER, Justices, concur.