2003 SD 95

**Guenther and Maria ROTH-LUEBBERS, Plaintiffs and Appellees,**

v.

**Hanspeter OBEE and Agrar Tour GMBH, Defendants and Appellants.**

**Christl Jacob, Individually, and as Personal Representative for the Estate of Horst Jacob, Plaintiffs and Appellees,**

v.

**Hanspeter Obee and Agrar Tour GMBH, Defendants and Appellants.**

Nos. 22527, 22528.

Supreme Court of South Dakota.

Argued April 30, 2003.

Decided Aug. 6, 2003.

Robert Gusinsky and Craig A Pfeifle of Lynn, Jackson, Schultz & Lebrun, Rapid City, South Dakota, Attorneys for plaintiffs and appellees.

Robert C. Riter, Jr. of Riter, Rogers, Wattier & Brown, Pierre, South Dakota, Attorneys for defendant and appellant Hanspeter Obee.

David A. Gerdes of May, Adam, Gerdes, & Thompson, Pierre, South Dakota, Attorneys for defendant and appellant Agrar Tour GMBH.

VON WALD, Circuit Judge.

[¶ 1.] Hanspeter Obee and Agrar Tour GMBH (hereinafter Obee and Agrar) appeal a circuit court decision denying their motions to dismiss actions relating to a motor vehicle accident occurring in the State of South Dakota brought by Guenther and Maria Rothluebbers and Christl Jacob (hereinafter Rothluebbers and Jacob) on the grounds of *forum non conveniens* and due process. We affirm.

FACTS AND PROCEDURAL HISTORY

[¶ 2.] For purposes of this appeal, the facts of the case are largely undisputed.[1] On June 14, 2001, a one-vehicle accident occurred in Pennington County, South Dakota near Ellsworth Air Force Base. The vehicle, a passenger van rented from Enterprise Rent–A–Car, was driven by Obee, a German resident. Obee was the director of a tour group from Germany traveling from Chicago, Illinois to Salt Lake City, Utah. The tour, organized by a German company Agrar, was agricultural in nature

1. Discovery has yet to be completed in this case.

and had two planned stops in South Dakota in Pierre and Spearfish. All of the tour participants entered into the tour agreement in Germany, the country in which they were all residents. The tour participants were originally to be transported by motor coach, but, due to low tour enrollment numbers, the tour director rented two vans in Chicago. Obee was driving one of the vans. While driving on Interstate 90, Obee either fell asleep, was distracted or the van was pushed off the road by a gust of wind. The van collided with parked construction equipment in a closed left lane of the highway and rolled.

[¶ 3.] At the time of the accident there were nine people in the van: Obee and his wife, Edit von Eerdo; Horst Jacob and his wife, Christl; Guenther Rothluebbers and his wife, Marie; Heinrich Bode and his wife, Rosemarie; and, John Rudolph. As a result of the accident, many of the passengers were injured and Horst Jacob died. All of the injured tour participants were treated at medical facilities in Rapid City, South Dakota.

[¶ 4.] Rothluebbers later brought a claim against Obee and Agrar in Pennington County for injuries they sustained in the accident. Christl Jacob also brought a claim against Obee and Agrar in Pennington County for the injuries she sustained and also for the wrongful death of her husband, Horst. On August 28, 2002, the circuit court entered an order in the Rothluebbers' case denying Obee and Agrar's motion to dismiss on the grounds of *forum non conveniens* and due process. A similar order was entered in the Jacob case. Petitions for intermediate appeals to this Court were filed in both cases on September 5, 2002 and intermediate appeal was granted by order of this Court.

## ISSUES

Whether the circuit court erred in ruling that the claims made by Rothluebbers and Jacob in Pennington County should not be dismissed due to the common law doctrine of *forum non conveniens.*

Whether the circuit court erred in ruling that exercising jurisdiction over Obee and Agrar did not offend traditional notions of fair play and substantial justice in violation of the Due Process Clauses of the state and federal Constitutions.

## STANDARD OF REVIEW

[¶ 5.] The standard of review for denial of a motion to dismiss based upon the doctrine of *forum non conveniens* has been set forth as follows:

A trial court has broad discretion in deciding a motion to dismiss based on *forum non conveniens* and that decision will be overturned only for abuse of discretion. *Reid–Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir.1991). Abuse of discretion occurs when the district court does not hold the defendants to their burden of persuasion on all the elements of the *forum non conveniens* analysis, fails to consider the relevant public and private interest factors established in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), or clearly errs in weighing the *Piper Aircraft* factors. *Reid–Walen*, 933 F.2d at 1394.

*EFCO Corp. v. Aluma Systems USA, Inc.*, 268 F.3d 601, 603 (8th Cir.2001).

## ANALYSIS AND DECISION

### FORUM NON CONVENIENS

[¶ 6.] Rothluebbers and Jacob argue that the common law doctrine of *forum non conveniens* does not exist in South Dakota. They cite the admiralty case of *American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)(holding state court not required to

implement or adopt doctrine of *forum non conveniens* in courts of its state) in support of their argument. However, that case is in direct conflict with South Dakota law and is therefore unpersuasive.[2]

■ [¶ 7.] SDCL 1–1–24 provides, "[i]n this state the rules of the common law ... are in force, except where they conflict with the will of the sovereign power." There is no indication that the common law doctrine of *forum non conveniens* conflicts in any way with a federal or state statute, or the Constitution. There is also no indication that this Court has ever refused to adopt the doctrine in this context. Consequently, the doctrine of *forum non conveniens* is alive and well in the State of South Dakota. Therefore, we discuss the applicability of that doctrine to these facts.

■ [¶ 8.] The doctrine of *forum non conveniens* has long been recognized by the United States Supreme Court:

"when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case," even if jurisdiction and proper venue are established.

*American Dredging Co.*, 510 U.S. at 447–448, 114 S.Ct. 981 (quoting *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. 252). *"Forum non conveniens* is a discretionary doctrine which vests in the district courts the power to abstain from the exercise of jurisdiction 'even where authorized by statute if the litigation can more appropriately be conducted in a foreign tribunal.' " *Estate of Rick v. Stevens*, 145 F.Supp.2d 1026, 1035 (N.D.Iowa 2001) (quoting *DeMelo v. Lederle Labs.*, 801 F.2d 1058, 1060 (8th Cir. 1986)).

■ [¶ 9.] The principles that govern a motion to dismiss on *forum non conveniens* grounds are well settled in the eighth circuit and relevant to the discussion here. The threshold inquiry is whether "there is an adequate alternative forum available in which the dispute can be resolved." *Rick*, 145 F.Supp.2d at 1036. To attempt to establish an alternative forum Obee and Agrar offered the affidavit of Gerrett Hoher indicating that a German court of law could be a proper venue in this dispute. As support for that proposition, the trial court was cited numerous sections of the German Code of Civil Procedure purportedly establishing jurisdiction in Germany.[3] There was no dispute

---

2. Rothluebbers and Jacob also argue that *Lustig v. Lustig*, 560 N.W.2d 239 (S.D.1997) controls this issue. We disagree. *Lustig* was a divorce and child custody case. In that context, this Court pointed out that some states, *i.e.* Illinois, have certain statutes in place in regard to *forum non conveniens* while South Dakota does not. Further, this Court stated: "No margin within SDCL 15–5–11(3) and 25–4–30.1 grants our courts the means to dismiss divorce actions, properly commenced first in South Dakota, in favor of another state's jurisdiction." *Id.* at 244 (citing *In re M.C.*, 527 N.W.2d 290, 293 (S.D.1995)). The difference between the present case and *Lustig* is great. In *Lustig*, the Court neither raised nor consid-

ered SDCL 1–1–24 which specifically provides that, in South Dakota, the rules of the common law are in force except where they conflict with the federal or state Constitution or laws. Therefore, *Lustig* is distinguishable from the present case.

3. Hoher cited Sections 12 and 13 of the German Code of Civil Procedure in the affidavit submitted below. These sections acknowledge that the proper place of venue in a court case is the defendant's place of permanent residence. He also cited Article 40, Section (2) of the Introductory Act to the German Code (IAGCC). He claimed:

below that Germany offers an alternate forum and, therefore, the first prong of the inquiry is met in this case.

[¶ 10.] After meeting the first prong, a court must next balance "a number of factors in order to determine whether they outweigh the deference ordinarily attended to the plaintiff's choice of forum." *Id.* The United Stated Supreme Court, in the case *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), enumerated a list of factors which must be considered in ruling on motions predicated on the doctrine of *forum non conveniens.* "To guide trial court discretion, the Court provided a list of 'private interest factors' affecting the convenience of the litigants, and a list of 'public interest factors' affecting the convenience of the forum." *Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. 252 (citing *Gilbert,* 330 U.S. at 508–509, 67 S.Ct. 839).

[¶ 11.] The factors set forth in *Gilbert* pertaining to the private interests of the litigant include:

the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id.* at n. 6 (quoting *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839). Whereas, the public interest factors used in determining the forum's convenience include:

the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having

the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.*

[¶ 12.] It is also important to acknowledge that there is a strong presumption in favor of the plaintiff's choice of forum. This presumption should be overcome only "when the private and public interest factors *clearly point* toward trial in the alternative forum" and the presumption applies with less force when the plaintiff or parties are foreign. *Piper,* 454 U.S. at 255, 102 S.Ct. 252 (emphasis added). The *Piper* decision also indicated that if the plaintiff's home forum is selected it is reasonable to assume that the chosen forum is the most convenient. *Id.* at 256, 102 S.Ct. 252. However, when the plaintiff is foreign this assumption loses its reasonableness because the central purpose of a *forum non conveniens* inquiry is to ensure a convenient forum. *Id.* Clearly, a foreign plaintiff's choice of a forum that is not his own would be less convenient for him and therefore be entitled to less deference. *Id.*

[¶ 13.] As previously mentioned, Obee and Agrar contend that there is another adequate forum for this case in Germany. The affidavit offered by Hoher supports that position. Further, Obee and Agrar contend that in light of the alternative forum both the public and private interest factors fashioned in the *Gilbert* decision warrant dismissal of Rothluebbers and Ja-

Article 40 of the IAGCC which became effective June 1, 1999, covers claims for damages against Germans caused by them in foreign countries. Section (2) of Article 40 contains a special rule, applying to all

cases in which the tortfeasor and the victim both had their usual domiciles/residences in the same country at the time when liability arose. In such case, the law of such country shall apply.

cob's actions in Pennington County. Therefore, we address those factors in turn based on what was presented to the trial court. For the reasons recited below, we cannot say the trial court abused its discretion on these facts.

### Private Interest Factors

■■■ [¶ 14.] The first private interest factor is the "relative ease of access to sources of proof." *Piper Aircraft*, 454 U.S. at 241, n. 6, 102 S.Ct. 252. Obee and Agrar contend that the sources of proof for liability and damages in this case will be medical and lay witnesses that reside in Germany. Their contention is that all of the people injured in the accident eventually received treatment in Germany and as a result only those medical personnel, along with the lay witnesses, will be able to give testimony as to the lingering effects of the injuries. Furthermore, Obee and Agrar contend that having these witnesses travel to South Dakota will constitute a great expense and in any event the witnesses cannot be compelled to attend court proceedings here.

[¶ 15.] While Obee and Agrar's assertions present valid considerations it does not overwhelm the other relevant factors thereby requiring reversal of the trial court. Obee and Agrar neglect to see the entire picture in regard to the witnesses who will have to testify and the actual importance of those witnesses. Among the long list of potential witnesses in South Dakota are paramedics, Pennington County sheriff's deputies, Rapid City Hospital emergency room personnel, local or regional meteorologists, and accident reconstructionists. While Obee and Agrar list certain non-parties who reside in Germany, it is not certain that those individuals would even be helpful in this litigation or that they would be as important as the witnesses just mentioned. Certainly, the trial court could properly consider the fact that the depositions of foreign witnesses could be used at trial in balancing the relevant considerations and assertions made by Obee and Agrar in regard to this factor.

[¶ 16.] The second private interest factor for review is the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Id.* In addressing this issue, the trial court recognized that no matter what forum this matter is tried there will be significant expenses for both parties. As an appellate court, we will not put a preliminary price tag on the cost of litigation or speculate in terms of dollars and cents as to the cost of obtaining the attendance of witnesses. However, we do recognize that as it relates to the availability of compulsory process for attendance by unwilling witnesses, the trial court's decision properly recognized that the number and importance of the witnesses in South Dakota cannot be undervalued. The subpoena power can compel the attendance of these South Dakota witnesses.

[¶ 17.] As to the last private interest factor, consideration of whether a view of the premises or accident scene by the trier of fact would be appropriate, that is a question yet to be addressed by the trial court. We do not make such determinations as to the desirability of such on appeal. However, should the trier of fact inspect the accident scene, then this factor would balance in favor of Rothluebbers and Jacob. As a result, our review of these factors does not lead us to believe the trial court ignored or improperly weighed the private interest factors to constitute an abuse of discretion in denying the motions to dismiss.

### Public Interest Factors

■■■ [¶ 18.] The first public interest factor that merits consideration is whether the case will create "administrative diffi-

culties flowing from court congestion." *Piper Aircraft*, 454 U.S. at 241, n. 6, 102 S.Ct. 252. With the exception of the residence of the parties, there is no indication that this auto accident case is different in any significant respect from any other auto accident case. There is nothing in the record to suggest that this auto accident case concerning liability and damages will congest the circuit court calendar or create exorbitant administrative difficulties. We note that when addressing this factor it is particularly suited for determination by the trial court. There is nothing to indicate this factor was inappropriately weighed by the trial court. Clearly, we are not in a position to second-guess a trial court's decision concerning its calendar.

[¶ 19.] We must also consider whether maintaining this action in South Dakota would unfairly burden the citizens of Pennington County with jury duty. *Id.* Obee and Agrar cite a line of cases from the State of New York that address this issue and apply the doctrine of *forum non conveniens* to dismiss actions involving foreign nationals who collided with each other while driving in New York. *See Martin v. Mieth*, 35 N.Y.2d 414, 362 N.Y.S.2d 853, 321 N.E.2d 777, 780 (1974); *Singh v. Zuidema*, 221 A.D.2d 1020, 634 N.Y.S.2d 301 (1995); *McLeod v. Lovelace*, 117 A.D.2d 989, 499 N.Y.S.2d 290 (1986). The New York courts in all three of these cases cited "inconvenience" to their forum as a major problem. *Id.* While this is a consideration, the record makes it clear that Judge Trimble did not believe that it would pose an "inconvenience" to the court's calendar or unfairly burden the court if this action were maintained in Pennington County. Obee and Agrar point to no facts that would show that the trial court abused its discretion in reaching that decision.

[¶ 20.] The final public interest factor that must be taken into account in this case in determining if dismissal was warranted is whether it raises conflict of laws problems for the trial court to hear this matter. South Dakota has adopted the most significant relationship approach for deciding conflict of laws questions. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63 (S.D.1992). In *Chambers*, this Court held that "the forum's comparative negligence law should be applied to a forum's domiciliaries who are involved in an accident in another state." *Id.* at 69. When making the decision as to what forum's law should be used, four factors are considered: the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile of the parties, and the place where the relationship between the parties is centered. *Id.* at 68 (citing Restatement (Second) of Conflict of Laws § 145 (1971)). In addition, a court must look at certain policy principles when making its decision concerning the applicable law. The principles to be considered in making that decision are:

1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Chambers, supra* (quoting *Restatement (Second), supra* § 6).

[¶ 21.] Applying these principles in reviewing the trial court's decision does not lead us to believe the trial court abused its discretion. Significantly, it is undisputed that the place where the injury occurred and the place where the conduct causing the injury occurred was South Dakota. Yet, the place of business or residence of the parties and the place where the relationship between the parties was centered is Germany.[4] However, *Chambers* tells us that "these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Chambers, supra* (quoting *Restatement (Second), supra* § 145). Because we are dealing with liability connected to a car accident the trial court recognized that there are important contacts relating to the place of the accident. Obee and Agrar argue that due to the holding in *Chambers* and the long line of cases cited in that decision, the applicable law on damages would point to the trial court using German law.[5] Essentially, they argue German courts are better suited for applying German law and therefore dismissal is required. However, consideration of this factor does not apply to the exclusion of the other factors. Moreover,

it appears there may be both liability and damage issues to be addressed at trial. At this early stage, it may preliminarily appear that liability issues favor application of South Dakota law while damage issues favor application of German law. Although each party argues the issue and law most favorable to their position on this *forum non conveniens* dispute, the parties contacts and their relative importance with respect to each issue will be determined when discovery is completed and the real issues in dispute become more apparent. In any event, the trial court expressed no problems in the application of either law no matter which issue is in dispute.

[¶ 22.] The trial court was required to consider and weigh these varying factors. The record demonstrates the trial court considered and rejected Obee and Agrar's arguments. Our review of the private and public interest factors as applied here do not indicate an abuse of discretion by the trial court.

## DUE PROCESS

[¶ 23.] The inquiry into whether South Dakota can assert jurisdiction over Obee and Agrar is two-fold. First, the court must determine whether there is any statutory authority that gives the court jurisdiction over a nonresident. *Denver Truck & Trailer v. Design Services*, 2002 SD 127, ¶ 9, 653 N.W.2d 88, 91. Second, the court

---

4. In considering these factors both sides present valid arguments, however, we do not review the trial court's decision anew but, instead, determine whether the trial court abused its discretion.

5. *Schwartz v. Consolidated Freightways Corp. of Del.*, 300 Minn. 487, 221 N.W.2d 665 (1974)(choice-influencing considerations— Minnesota comparative negligence law applies to Minnesota resident injured in Indiana by defendant licensed to do business in

Minnesota); *DeRemer v. Pacific Intermountain Exp. Co.*, 353 N.W.2d 694 (Minn.Ct.App. 1984)(choice-influencing considerations approach—Minnesota comparative negligence law applies to Minnesota resident injured in auto accident in South Dakota); *Issendorf v. Olson*, 194 N.W.2d 750 (N.D.1972)(dominant contacts approach—North Dakota law of contributory negligence applies to North Dakota resident injured in auto accident in Minnesota).

must decide whether the proposed assertion of jurisdiction comports with federal due process requirements. *Id.*

▰ [¶ 24.] The statutory authority used to determine whether there is jurisdiction is found in SDCL 15–7–2, South Dakota's long arm statute. In relevant part, SDCL 15–7–2 reads:

Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:

(1) The transaction of any business within the state;

(2) The commission of any act which results in accrual within this state of a tort action[.]

In accord with *Denver Truck*, the long arm statute is to be construed broadly. *Denver Truck, supra.*

▰ [¶ 25.] Here, Obee and Agrar transacted business in South Dakota. The tour, which started in Chicago, was to make two stops in South Dakota, one in Pierre and the other in Spearfish. There is also evidence that the group may have stayed overnight in South Dakota. Obee, driver of the Agrar van, allegedly committed an act in South Dakota that created these tort actions. These facts alone are enough to justify application of the long arm statute.

▰ [¶ 26.] The next step in determining if jurisdiction is appropriate is to consider whether the federal due process requirements have been met. This inquiry requires the Court to decide whether Obee and Agrar had sufficient minimum contacts with South Dakota to conclude that the assertion of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *Denver Truck*, 2002 SD 127 at ¶ 10, 653 N.W.2d at 91 (quoting

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The standard for determining what constitutes sufficient minimum contacts requires:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Ventling v. Kraft*, 83 S.D. 465, 161 N.W.2d 29 (1968). Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one. An important factor bearing upon the reasonableness of asserting jurisdiction is to determine if defendant's conduct and connection with the forum state are such that he would have reasonably anticipated being brought into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.[2d] 490 (1980).

*Denver Truck*, 2002 SD 127 at ¶ 11, 653 N.W.2d at 91 (quoting *Opp v. Nieuwsma*, 458 N.W.2d 352, 355–356 (S.D.1990)).

[¶ 27.] The thrust of Obee and Agrar's argument on this issue is much the same as their argument on the prior issue. They claim that, even if there is jurisdiction under South Dakota's long arm statute, the federal due process clause requires that the assertion of jurisdiction not offend "traditional notions of fair play and substantial justice." *Denver Truck*, 2002 SD 127 at ¶ 10, 653 N.W.2d at 91 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154). Obee and Agrar rely on the United States Supreme Court case of *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92

(1987) to assert that, if South Dakota exercises jurisdiction over Obee and Agrar, the lawsuit would be both inconvenient to them and South Dakota has no real interest in adjudicating the dispute. We disagree.

[¶ 28.] By comparison, the *Asahi* decision relies heavily on *World–Wide Volkswagen, supra.* *World–Wide Volkswagen* concerned a defective automobile purchased in New York by New York residents and driven to Arizona. While enroute, the vehicle was involved in an accident in Oklahoma that caused it to catch fire. *Id.* A lawsuit was brought in Oklahoma and World–Wide Volkswagen Corporation argued that it sold no automobiles in Oklahoma and, thus, was not susceptible to service of process in that state. *Id.* The United States Supreme Court held that Oklahoma had no jurisdiction over the corporation. *Id.* In so holding, the Supreme Court stated:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. 559. Obee and Agrar rely on this reasoning to assert jurisdiction in South Dakota is improper under the due process clause. However, the Court also discussed whether or not it was foreseeable that the defendant or one of its products would end up in the stream of commerce in the forum state when determining if jurisdiction is appropriate. The Supreme Court opined that jurisdiction could be imposed upon the defendant if the defendant's conduct and connections with the forum were enough to foresee being hauled into court in the forum. *Id.* at 297, 100 S.Ct. 559. The Court concluded by observing that, when a person or corporation " 'purposefully avails itself of the privilege of conducting activities within the forum State,' " it has clear notice that it is subject to suit there. *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). We find that reasoning applicable here.

[¶ 29.] Obee and Agrar were not mere tour novices. There is evidence in the record that this was not the first tour that they conducted through the midwest. It also was not mere happenstance that Obee and Agrar operated in South Dakota. The group had two planned South Dakota stops. In light of these facts, the trial court did not err in determining Obee and Agrar purposefully availed themselves to the laws of South Dakota and as a result it was foreseeable that they could be "hauled into court" in South Dakota.

[¶ 30.] For the reasons stated above, we adopt the *forum non conveniens* doctrine as is required by SDCL 1–1–24 and hold that the circuit court did not err when it found that it had jurisdiction over Obee and Agrar and that exercising such jurisdiction would not offend traditional notions of fair play and substantial justice.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶ 33.] VON WALD, Circuit Judge, for SABERS, Justice, disqualified.