#25380-a-SLZ

**2010 SD 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MILTON L. PETERSON,                                    Plaintiff and Appellant,

v.

LORINE FELDMANN, DARLENE
KAPPENMAN and DORIS FRY,                    Defendants and Appellees,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TIMOTHY W. BJORKMAN
Judge

\* \* \* \*

MICHAEL E. UNKE                                    Attorney for plaintiff
Salem, South Dakota                              and appellant.

CHRIS A. NIPE of
Larson and Nipe                                      Attorneys for defendants
Mitchell, South Dakota                          and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 26, 2010

OPINION FILED **06/30/10**

#25380

ZINTER, Justice

[¶1.] Milton Peterson appeals the dismissal of his action to invalidate a trust amendment allegedly executed under undue influence in Missouri. After considering the *Gilbert*[1] factors, the circuit court dismissed on the ground of *forum non conveniens*. The circuit court found that Missouri was more convenient because it was an available forum, it was the trustor's residence, it was the location of some trust property, and it was the location of the evidence relevant to the alleged undue influence. We affirm.

*Facts and Procedural History*

[¶2.] Before their deaths, Laurence and May Peterson lived on a family farm near Montrose, South Dakota. They had five children– Lorine Feldmann, Darlene Kappenman, Elaine Laursen, Milton Peterson (Peterson), and Doris Fry. Feldmann and Fry now reside in Missouri, Kappenman resides in Sioux Falls, and Laursen resides in Arizona. Peterson lives on and still operates the family farm near Montrose.

[¶3.] In July 2001, Laurence and May executed living trusts. The farm property was placed in the trusts. The trusts provided that upon the death of the trustors, Peterson had an option to purchase the property at its appraised value.

[¶4.] Laurence died on September 3, 2001, and Peterson purchased the real property in the Laurence Peterson Trust at its appraised value. In 2004, May moved to Missouri where Feldmann and Fry resided. May purchased a home in

_____

1. *See* Gulf Oil Corp. v. Gilbert, 330 US 501, 508-09, 67 SCt 839, 843, 91 LEd 1055 (1947).

-1-

Missouri, and Fry moved in with May. May later transferred her bank accounts to a Missouri bank, and until her death over four years later, she visited South Dakota only twice a year.

[¶5.] In January 2006, Feldmann took May to a Missouri attorney, who prepared a will and an amendment to May's trust. The trust amendment: (1) eliminated Peterson's option to purchase the real property and gave that option to Feldmann, Kappenman, and Fry; (2) provided that the purchase price for the real property would be its assessed rather than appraised value; (3) changed the trustees from Feldmann and Peterson to Feldmann and Kappenman; and, (4) added a forfeiture provision that applied to any beneficiary who sought to invalidate any trust provision or the amendment.

[¶6.] May died in Missouri in November 2008. Her trust assets consisted of the Missouri bank accounts and 460 acres of the original family farm. Under the trust amendment, Feldmann and Kappenman gave notice of intent to exercise the option to purchase the real estate at assessed value. In December 2008, Peterson filed a petition in South Dakota circuit court for trust supervision. The circuit court accepted the petition. The trust supervision action is ongoing and not the subject of this appeal.

[¶7.] In January 2009, Peterson commenced this separate action challenging the trust amendment on the ground of undue influence. Feldmann and Kappenman denied undue influence and asserted that the circuit court should dismiss Peterson's action on the doctrine of *forum non conveniens*. The circuit court noted that the parties did not dispute the availability of the Missouri courts to resolve the undue

influence issue. The court also noted that most of the evidence and witnesses pertaining to the undue influence action were located in Missouri. After analyzing the applicable *Gilbert* factors, the court dismissed the action, concluding that Missouri was the more convenient forum.

*Decision*

[¶8.] The doctrine of *forum non conveniens* is a part of the common law of South Dakota.[2] Peterson, however, argues that there was no showing Missouri is an available forum and the *Gilbert* factors do not warrant application of the doctrine in this case.[3] Our standard of review of a decision to dismiss on the grounds of *forum non conveniens* is established:

---

2. In *Piper Aircraft Co. v. Reyno*, the Supreme Court observed that the doctrine "originated in Scotland, and became part of the common law of many States." 454 US 235, 249, n13, 102 SCt 252, 262, 70 LEd2d 419 (1981). We have held that the doctrine is a part of the common law of South Dakota:

> There is no indication that the common law doctrine of *forum non conveniens* conflicts in any way with a federal or state statute, or the Constitution. There is also no indication that this Court has ever refused to adopt the doctrine in this context. Consequently, the doctrine of *forum non conveniens* is alive and well in the State of South Dakota.

    Rothluebbers v. Obee, 2003 SD 95, ¶ 7, 668 NW2d 313, 317.

3. Peterson also argues that the court erred in failing to assert jurisdiction under SDCL §§ 55-3-39 and 55-3-40. SDCL 55-3-39 provides that a "state jurisdiction provision" in a trust is valid if certain conditions exist. SDCL 55-3-40 provides that the validity, construction and administration of trusts with "state jurisdiction provisions" are determined under the laws of this state. Peterson contends that these statutes require the undue influence action to be tried in South Dakota, and to that extent, the statutes supplant the common law doctrine of *forum non conveniens*. Peterson's argument is misplaced because the statutes do not apply in this case.

(continued . . .)

> A trial court has broad discretion in deciding a motion to dismiss based on *forum non conveniens* and that decision will be overturned only for abuse of discretion. Abuse of discretion occurs when the [circuit] court does not hold the defendants to their burden of persuasion on all the elements of the *forum non conveniens* analysis, fails to consider the relevant public and private interest factors . . ., or clearly errs in weighing [those] factors.

Rothluebbers v. Obee, 2003 SD 95, ¶ 5, 668 NW2d 313, 316.

[¶9.] We recognized the doctrine of *forum non conveniens* in *Rothluebbers:*

"*Forum non conveniens* is a discretionary doctrine which vests in the . . . courts the power to abstain from the exercise of jurisdiction 'even where authorized by statute if the litigation can more appropriately be conducted in a foreign tribunal.'" *Id*. ¶ 8, 668 NW2d at 317 (citations omitted).

> "When an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the

_____

(. . . continued)

> SDCL 55-3-39 validates state jurisdictional provisions, and it does so only when such a provision exists in a trust. Concededly, May's trust gave the trustee the powers granted in South Dakota's Trustee's Powers Act (SDCL ch 55-1A). The trust also incorporated South Dakota law on the descent of personal property if the trustor died without a will. But, these are not "state jurisdiction provisions." A state jurisdiction provision is "a provision within the trust instrument that the laws of this state govern the validity, construction, and administration of a trust or that the trust is subject to the jurisdiction of this state." SDCL 55-3-42. Although this trust incorporates South Dakota law on trustee powers and descent, there is no trust provision that the trust is subject to the jurisdiction of this state or that South Dakota law governs the validity, construction, or administration of the trust. Therefore, the circuit court correctly concluded that SDCL §§ 55-3-39 and 55-3-40 do not apply, thereby supplanting the common-law doctrine of *forum non conveniens*.

> exercise of its sound discretion, dismiss the case," even if jurisdiction and proper venue are established.

*Id.* (citing American Dredging Co. v. Miller, 510 US 443, 447-48, 114 SCt 981, 985, 127 LEd2d 285 (1994) (quoting Piper Aircraft Co. v. Reyno, 454 US 235, 241, 102 SCt 252, 258, 70 LEd2d 419 (1981))).

[¶10.] "[T]he threshold inquiry is whether 'there is an adequate alternative forum available in which the dispute can be resolved.'" *Id.* ¶ 9, 668 NW2d at 317 (citations omitted). In this case, the circuit court noted that "[n]either party . . . disputed the availability of Missouri's courts to handle the claim." In *Rothluebbers*, we observed that "[t]here was no dispute below [that the other jurisdiction] offer[ed] an alternate forum and, therefore, the first prong of the inquiry [was] met[.]" *Id.* ¶ 9, 668 NW2d at 318. For the same reason, we see no error in the circuit court's finding that Missouri was an adequate, alternative forum.

[¶11.] The circuit court was next required to consider private and public interest factors to determine "whether they outweigh the deference ordinarily attended to the plaintiff's choice of forum." *Id.* ¶ 10, 668 NW2d at 318. Those factors are "'private interest factors' affecting the convenience of the litigants, and . . . 'public interest factors' affecting the convenience of the forum." *Id.* (citing *Piper Aircraft*, 454 US at 241, n6, 102 SCt at 258 (quoting Gulf Oil Corp. v. Gilbert, 330 US 501, 508-09, 67 SCt 839, 843, 91 LEd 1055 (1947))). The private interest factors include:

> [R]elative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all

>other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* ¶ 11, 668 NW2d at 318. The public interest factors include:

>[T]he administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial . . . in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (citing *Piper Aircraft*, 454 US at 241, n6, 102 SCt at 258).

[¶12.] With respect to the private interest factors, the circuit court noted that May lived the last four years of her life in Missouri; she received her medical care in Missouri; the attorney who prepared her will and amendment lived in Missouri; Feldmann and Kappenman lived in Missouri while Peterson and Fry lived in South Dakota; and, the trust assets included land in South Dakota and bank accounts in Missouri. Although the court acknowledged that some witnesses lived outside of Missouri, the court found that virtually all of the witnesses relating to the undue influence issue lived in Missouri. And with respect to the location of the real estate, the court observed "the fact that the trust assets include the South Dakota farmland does not heavily favor South Dakota as a forum, because the specific property held by the trust has little bearing on the question of undue influence in the execution of the Amendment."

[¶13.] With respect to public interest factors, the court found that none of the public interest factors heavily favored a South Dakota forum or a Missouri forum. The court observed that "[b]oth states have an interest in the outcome of the litigation, and the case would not unduly burden either forum or present complex

questions of choice laws." After balancing the convenience of the litigants and the convenience of the forum, the court concluded that Missouri was more favored.

[¶14.]     Peterson argues that the circuit court abused its discretion in concluding the private and public factors favored Missouri. Peterson notes that a South Dakota attorney created the original trust, a South Dakota court had supervision of the trust, the tax returns were prepared in South Dakota, and the farmland was located in South Dakota. These factors, however, have nothing to do with Peterson's undue influence claim, which allegedly occurred in Missouri. And, Peterson's authorities do not support his argument that the location of the farmland is dispositive. None of his cases involved the question of *forum non conveniens*[4] or the determination of a narrow undue influence dispute in an alternate forum while

---

4.     In *Beale v. Beale*, 807 So2d 797 (FlDistCtApp 2002), the plaintiffs sought to impose a constructive trust on property located in the Bahamas. The Florida court noted that because plaintiffs sought to restrain the defendant's alienation of her Bahamian property, "Florida's conflict of law rule is *lex loci rei sitae* [and it governs]." *Id.* at 798. In *First Nat'l Bank in Mitchell v. Daggett*, 242 Neb 734, 497 NW2d 358 (1993), the Nebraska Supreme Court only held that Nebraska law governed the validity of the trust, despite a provision in the trust – unlike this case – that provided Georgia law would apply respecting the "identity of beneficiaries." Also unlike this case, the Nebraska court noted that Georgia had "absolutely no contacts" with the trust or the parties. *Id.* at 739, 497 NW2d at 363. In In re *AppOnline.com, Inc.*, 315 BR 259 (EDNY 2004), the issue involved the validity of a trust, *id.* at 274. In *State* ex rel *Working v. Costa*, 216 SW3d 758 (TennCtApp 2006), the issue was whether the trustees of a charitable trust were required to seek approval of a Tennessee court for its change of situs to Mississippi. *Id.* at 768. In *State v. Jacobson*, 74 WashApp 715, 876 P2d 916 (1994), the trustee was convicted of theft for selling assets of the trust without permission of the beneficiaries. *Jacobson* held that under California law, the owners of the condominium were the beneficiaries of the trust, and that under the terms of the trust, the trustee had no power to sell the condominium. The only issue in *Laughlin v. March*, 19 Wash2d 874, 145 P2d 549 (1944), was "whether the

(continued . . .)

the trust supervision action continues in the forum state. Peterson has failed to identify authority holding that the situs of a trust asset trumps the doctrine of *forum non conveniens* as a matter of law.

[¶15.]     The circuit court considered the availability of another forum together with the relevant private and public interest factors. The parties did not dispute that Missouri was an available forum. None of the public interest factors weighed in favor of South Dakota, and virtually all of the evidence and witnesses relevant to the undue influence question were located in Missouri. These practical considerations made Missouri an easier, more expeditious, and less expensive forum. As the Supreme Court has noted, a trial court does not act "unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held [outside the forum]." *Piper Aircraft*, 454 US at 258, 102 SCt at 267.

[¶16.]     We acknowledge that *Rothluebbers* adopted *Piper Aircraft's* admonitions:

> It is [ ] important to acknowledge that there is a strong presumption in favor of the plaintiff's choice of forum. This presumption should be overcome only "when the private and public interest factors *clearly point* toward trial in the alternative forum" and the presumption applies with less force when the plaintiff or parties are foreign. The *Piper* decision also indicated that if the plaintiff's home forum is selected it is reasonable to assume that the chosen forum is the most convenient.

_____

(. . . continued)
subject matter of the alleged trust [was] described with reasonable certainty in the declaration." *Id*. at 876-77, 145 P2d at 550.

2003 SD 95, ¶ 12, 668 NW2d at 318 (citing *Piper Aircraft*, 454 US at 255-56, 102 SCt at 252). *Forum non conveniens* should be used sparingly. South Dakota has an interest in providing a dispute resolution forum for its citizens, and some deference should be given to the forum choice by plaintiffs. The doctrine is appropriately used in the exceptional case where a forum choice clearly places a party at an unfair disadvantage. In this case, the circuit court methodically balanced all of the relevant factors. Therefore, we cannot say that the circuit court abused its discretion in finding Missouri the more convenient forum.

[¶17.]        GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.