1996 SD 47

Eugene MILLER, Plaintiff
and Appellant,

v.

Jeff WEBER, Myles Culbertson, Jerri
Simmons and the Bank of Albuquer-
que, a corporation, Defendants,

and

Buddy Major, Defendant and Appellee.

No. 19236.

Supreme Court of South Dakota.

Submitted on Briefs Jan. 9, 1996.

Decided April 24, 1996.

Richard A. Sommers and Kennith L. Gosch of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, for plaintiff and appellant.

Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee Major.

KONENKAMP, Justice.

[¶ 1] Plaintiff appeals orders setting aside default judgments and dismissing defendant, Buddy Major, for lack of personal jurisdiction. We affirm.

### Facts

[¶ 2] In 1987, Buddy Major, a New Mexico rancher, decided to liquidate his cattle herd and other assets to repay his debts. Myles Culbertson, a New Mexico resident, contacted Major seeking an option to buy the livestock at $470 a head. Hoping to realize a sizable profit on resale, Culbertson gave Major a $20,000 nonrefundable deposit in the event Culbertson failed to exercise his option. Jeff Weber of Timber Lake, South Dakota, expressed an interest to Culbertson in either buying or brokering the herd. Sometime in March, 1987 Weber and Culbertson reached an oral agreement for Weber to purchase the cattle at $505 per head. Weber, in turn, brokered the cattle to plaintiff Eugene Miller of Isabel, South Dakota. The deal was contingent on the cattle being successfully tested for brucellosis.

[¶ 3] On March 8, 1987 blood tests revealed several cattle were either brucellosis "suspects" or "reactors." Shipment was thus delayed for thirty days with the hope the questionable cows would prove negative upon retesting. In recognition of the testing prob-lem, Culbertson and Weber renegotiated the sale price to $480 a head. On March 9, 1987 Major contacted Dr. Steven England, the New Mexico State Veterinarian, and inquired about how he could get the cattle released for shipment. Dr. England advised Major of the import requirements for South Dakota and Nebraska, telling him the livestock could not be admitted in either state. Dr. England felt, however, the cattle could be transported within New Mexico because he believed they were not infected with brucellosis but tested positive due to "overage" vaccinations.[1] Major knew the ultimate buyer, Miller, was from South Dakota, but he was unaware of whether Miller intended to ship the herd to South Dakota or Nebraska. At Major's request, Dr. England called the South Dakota State Veterinarian, who confirmed South Dakota would not accept the cattle. Dr. England also made the same inquiry of Nebraska at Major's request. Major denied he was attempting to have the cattle sent to South Dakota, explaining that he merely wanted to know what was required to get them health certified for transportation, wherever they went.

[¶ 4] In April, 1987 Miller and Weber came to New Mexico and hired trucks to transport the cattle to Nebraska. Accordingly, the cattle were given health certificates for shipment there.[2] Before they were transported, Major advised Culbertson he had obtained new financing and offered to buy the cattle back at a profit to Weber and Miller. Alternatively, Major offered to keep the cattle at the ranch and charge a fee for pasturage. Weber and Miller, through Culbertson, rejected Major's offers and proceeded with the sale, aware of the potential problems with the brucellosis testing. Neither Miller nor Weber had a contract with Major for this sale; Major made no direct representations to either of them, but dealt through Culbert-

---

1. Calves are normally vaccinated for brucellosis within the first few months after birth. If they are vaccinated at an older age, a positive test may result. Further laboratory testing may confirm whether an animal is actually infected or the positive test result is merely due to the over-age vaccination. If it is determined to be an over-age vaccination problem, the animal is not infected with brucellosis.

2. Health certificates were issued by Dr. Griggs, a New Mexico veterinarian. Dr. Griggs failed to properly inspect the cattle prior to loading and was later disciplined. His license, for certification purposes, was suspended for six months. Major paid Dr. Griggs for his services in issuing the health certificates.

son.[3] Culbertson was acting for his own financial benefit, not as an agent for Major. The cattle were hauled to Nebraska in mid-April 1987. The animals arrived in poor health, with many dying en route.[4]

[¶ 5] Major was served with a summons and complaint in New Mexico on December 23, 1989. On advice from local counsel, he ignored these pleadings. Default judgments on liability and damages were entered against him on March 19, 1990 and April 19, 1994, respectively. Major moved to set aside these judgments on May 11, 1994. The circuit court granted the motion, then dismissed the case against Major for lack of personal jurisdiction. Miller appeals raising the following issues:

I. Whether the circuit court erred in dismissing the action against Major for lack of personal jurisdiction.

II. Whether the circuit court erred in setting aside the default judgments.

### Analysis

#### [¶ 6] I.  Personal Jurisdiction

■ [¶ 7] In granting Major's motion to dismiss, the circuit court relied upon depositions and affidavits. With no testimony from live witnesses, we review the facts *de novo* unrestrained by any deference to the lower court's findings. *Muhlenkort v. Union County Land Trust,* 530 N.W.2d 658, 660 (S.D.1995).

■ [¶ 8] Miller contends Major had sufficient minimum contacts with South Dakota to subject him to personal jurisdiction here.[5] We have previously set out the principles for

determining when circumstances provide sufficient contacts between a nonresident defendant and this state to support personal jurisdiction. *State v. American Bankers Ins. Co.,* 374 N.W.2d 609, 611–13 (S.D.1985). These standards were summarized in *Opp v. Nieuwsma,* 458 N.W.2d 352, 355–56 (S.D. 1990):

First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its law. Second, the cause of the action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one. An important factor bearing upon reasonableness of asserting jurisdiction is to determine if defendant's conduct and connection with the forum state are such that he would have reasonably anticipated being brought into court there.

■ [¶ 9] In *Opp,* an Iowa cattle seller was deemed to have sufficient contacts with South Dakota. *Id.* at 356. Miller argues, Major's activities were similar to the defendant's in *Opp.* Yet the facts in *Opp* reflect the seller's direct transactions with the forum state, establishing the requisite "minimum contacts" (1) the seller admitted he was informed at the time of the sale the cattle he sold would eventually reach South Dakota; (2) he sent fraudulent health documents to South Dakota; (3) he contacted a carrier and gave instructions to have the cattle shipped to South Dakota; (4) he received a check

---

3. Major did sell approximately 53 bulls and 20 cows directly to Weber, which were loaded and shipped off the Major ranch on March 8, 1987. An additional 20 cows from the Culbertson–Weber–Miller transaction were included in this shipment. However, this cattle transaction is not the subject of this litigation. The record does not reflect whether Major knew the destination of these cattle.

4. For a complete history of the disposition of the cattle after they arrived in Nebraska, *see Ducheneaux v. Miller,* 488 N.W.2d 902 (S.D.1992).

5. Miller's argument is premised upon SDCL 15–7–2(1), (2), and (14), South Dakota's long arm statute.

Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:

(1) The transaction of any business within the state;

(2) The commission of any act which results in accrual within this state of a tort action.

.    .    .    .    .

(14) The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States.

drawn on a South Dakota Bank; (5) he contacted the buyer through telephone calls to South Dakota; and (6) he had post-sale negotiations with the South Dakota buyer. *Id.* By directing his sales activities toward a South Dakota buyer, the seller was subject to personal jurisdiction here. In the present case, can Major's indirect connections constitute the requisite minimum contacts? "[A]ttenuated contacts" are insufficient to support personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

[¶ 10] Major's agreement was solely with Culbertson; if the sale would not have been completed, Major's recourse was to keep Culbertson's $20,000 deposit. He would not have been able to avail himself of the "benefits and protections" of South Dakota law to enforce the sale, because he had no contract with either Weber or Miller. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184. Major's activities in New Mexico were not directed at South Dakota. He never solicited Weber or Miller to purchase the cattle. Neither did he directly negotiate the sale with these buyers. He sent no correspondence and made no phone calls to South Dakota. Though he directed Dr. England to call South Dakota to inquire about cattle import requirements, he also had Dr. England inquire of Nebraska officials. Major was instrumental in getting the cattle health certified for shipment, but his purpose was to close the sale to his buyer, Culbertson. Major left for someone else's decision the destination for the cattle. Concededly, Major, through Culbertson, made an offer to buy back the cattle from Weber and Miller, yet this occurred only after the herd was sold and both Weber and Miller declined this offer. Most important, his arrangements to get the cattle health certified were to assist in shipping them to Nebraska, not South

Dakota. We conclude the circuit court properly dismissed Major from this action for lack of personal jurisdiction: Major had no substantial connection with South Dakota and to exercise jurisdiction over him would be improper as he could not have reasonably anticipated being brought into court here. *Opp,* 458 N.W.2d at 355–56.

## [¶ 11] II.  Default Judgments

[¶ 12] The circuit court granted Major relief from the default judgments under SDCL 15–6–60(b)(4) and (6).[6] The decision to grant or deny a motion under this rule rests with the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Hrachovec v. Kaarup,* 516 N.W.2d 309, 311 (S.D. 1994); *Peterson v. La Croix,* 420 N.W.2d 18, 19 (S.D.1988). "The purpose of SDCL 15–6–60(b) is to 'preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.' " *Gold Pan Partners, Inc. v. Madsen,* 469 N.W.2d 387, 391 (S.D.1991) (citations omitted). SDCL 15–6–60(b)(6) is a catch-all provision and cannot be used when another specific ground found within the statute applies. *In re Estate of Davis,* 524 N.W.2d 125, 129 (S.D.1994); *Gifford v. Bowling,* 86 S.D. 615, 200 N.W.2d 379, 382 (S.D.1972). Thus if section (4) applies, we need not consider section (6).

[¶ 13] "The appropriate inquiry ... under SDCL 15–6–60(b)(4) is limited to jurisdictional and due process issues only and the court is not empowered to relitigate the correctness of the decision." *Crowley v. Trezona,* 408 N.W.2d 332, 333 (S.D.1987). If the circuit court lacks jurisdiction over a defendant's person, a judgment or order entered against such defendant is void. *Id.* A mo-

---

6.  SDCL 15–6–60(b) states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(4) The judgment is void;

(6) Any other reason justifying relief from the operation of the judgment.

tion to set aside a void judgment under SDCL 15–6–60(b)(4) is not subject to the reasonable time requirement. *Jopling v. Jopling,* 526 N.W.2d 712, 714 (S.D.1995); *Kromer v. Sullivan,* 88 S.D. 567, 225 N.W.2d 591, 592 (S.D.1975). As the default judgments entered against Major were void for lack of personal jurisdiction, the circuit court's decision to vacate them was not an abuse of discretion.

[¶ 14] Affirmed.

[¶ 15] MILLER, C.J., and AMUNDSON and GILBERTSON, JJ., concur.

[¶ 16] SABERS, J., dissents.

SABERS, Justice, dissenting.

[¶ 17] I dissent on Issue 1 because the actions of Major, in connection with the ac-

tions of Culbertson were sufficiently directed at South Dakota to support jurisdiction under SDCL 15–7–2(1), (2) and (14), and *Opp v. Nieuwsma,* 458 N.W.2d 352 (S.D.1990).

[¶ 18] I also dissent on Issue 2 because the motion for relief from the default judgments was not timely,[7] the judgment was not void, and because Major ignored the pleadings on advice of counsel despite service on him as early as December 23, 1989.

---

**7.** As stated in the majority opinion, default judgments on liability and damages were entered against Major on March 19, 1990 and April 19, 1994 but he did move to set them aside until May 11, 1994.