2005 SD 55

Don **FRANKENFELD**, individually and on behalf of all others similarly situated, Plaintiff and Appellee,

v.

**CROMPTON CORPORATION**, Uniroyal Chemical Company, Inc., Uniroyal Chemical Company Limited, Defendants and Appellants,

Bayer Ag, Bayer Corporation, Rhein Chemie Rheinau Gbmh and Rhein Chemie Corporation, Defendants,

and

Flexsys NV and Flexsys America LP, Defendants and Appellants.

Nos. 23265, 23276.

Supreme Court of South Dakota.

Argued March 23, 2005.

Decided May 4, 2005.

Timothy J. Dougherty of Dougherty & Dougherty, Sioux Falls, South Dakota, Sanford Svetcov and Susan K. Alexander of Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, San Francisco, California, Attorneys for plaintiff and appellee Frankenfeld.

Ronald A. Parsons, Jr. and Scott N. Heidepriem of Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, South

Dakota, Daniel G. Swanson of Gibson, Dunn & Crutcher, Los Angeles, California, D. Jarrett Arp and James D. Slear of Gibson, Dunn & Crutcher, Washington, DC, Attorneys for defendants and appellants Flexsys NV and Flexsys America LP.

Gary D. Jensen of Beardsley, Jensen & Von Wald, Rapid City, South Dakota, Ian Simmons, Benjamin G. Bradshaw, Charles E. Borden and Jonathan R. Mitchell of O'Melveny & Myers, Washington, DC, Attorneys for defendants and appellants Crompton Corp., Uniroyal Chemical Co., Inc. and Uniroyal Chemical Co. Ltd.

KEAN, Circuit Judge.

[¶ 1.] Crompton Corporation and its subsidiaries, Uniroyal Chemical Company, Inc. and Uniroyal Chemical Company (collectively Crompton), as well as Flexsys N.V. and Flexsys America L.P. (collectively Flexsys) appeal the circuit court's denial of their motions to dismiss for lack of personal jurisdiction. Because we hold that personal jurisdiction over these defendants violates due process we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2.] Don Frankenfeld (Frankenfeld), individually and on behalf of himself and others similarly situated, brought this action against multiple defendants including Crompton and Flexsys.[1] Frankenfeld alleged that Crompton and Flexsys conspired to fix the price of rubber processing chemicals used to manufacture tires. Essentially, Frankenfeld argued that an agreement between Crompton and Flexsys inflated the price of tires purchased in South Dakota for both himself and other consumers. Frankenfeld claimed that the price fixing scheme violated South Dakota antitrust laws and sought to recover the damages that he and other consumers incurred by paying higher tire prices.[2]

[¶ 3.] Crompton, a Connecticut corporation with a principal place of business in Greenwich, Connecticut, globally marketed specialty chemical products and processing equipment including the chemicals used in the manufacture of rubber and tires. Its subsidiaries, the Uniroyal companies, were Delaware corporations with their principal places of business in Akron, Ohio. Flexsys, a Delaware Corporation with headquarters in Akron, Ohio, was the world's leading supplier of chemicals to the rubber industry.

[¶ 4.] Crompton and Flexsys sold their rubber processing chemicals to tire manufacturers such as Goodyear, Michelin, Firestone and Bridgestone. Those companies, principally located in Tennessee and North Carolina, then used the chemicals to manufacture tires. After those tires were

1. Frankenfeld also named Bayer AG, Bayer Corp., Rhein Chemie Rheinau GBMH and Rhein Chemie Corp. as defendants. The Bayer defendants did not move for dismissal in the circuit court and the Rhein Chemie defendants were dismissed by the circuit court pursuant to stipulation. Thus, they are not appellants here.

2. Frankenfeld requested that this Court take judicial notice of several items. Frankenfeld submitted selected filings, including a guilty plea, a statement of facts, and an indictment from a Canadian case against Crompton for violating the Canadian Competition Act.

Frankenfeld also submitted an information filed by the United States charging Crompton with violating Section 1 of the Sherman Act, 15 USC § 1, as well as selected filings of Crompton with the Securities and Exchange Commission, purportedly revealing a guilty plea to a conspiracy charge. Finally, Frankenfeld submitted a press release from the Department of Justice regarding a guilty plea by Bayer AG for participating in a rubber chemicals cartel. We acknowledge the receipt of those documents, but we need not take judicial notice of them for purposes of the issue presented in this appeal.

made, the tires proceeded along a chain of distribution from the manufacturers to distributors, then to retailers and eventually to consumers such as Frankenfeld. This chain involved only third parties who were not subject to this action. Once Crompton and Flexsys sold their chemicals to the tire manufacturers they had no control over the rest of the chain by which the tires were distributed.

[¶ 5.] Neither Crompton nor Flexsys were incorporated, headquartered or licensed to do business in South Dakota. Neither maintained an office or employees in South Dakota. Neither owned any real property in the state nor maintained any bank accounts here. Neither engaged in any marketing of any sort in South Dakota and neither had any customers here. Neither manufactured, delivered, distributed or sold any product in South Dakota. In short, Crompton and Flexsys did not have any direct relationship with the State of South Dakota. Their only presence in South Dakota was through the tires sold here by third parties, tires which contained the chemicals they produced.

[¶ 6.] In light of the above facts, Crompton and Flexsys moved to dismiss Frankenfeld's suit for lack of personal jurisdiction. Both Crompton and Flexsys conceded that South Dakota's long arm statute established jurisdiction, but they argued that their lack of minimum contacts with South Dakota rendered personal jurisdiction inappropriate. The circuit court disagreed and found personal jurisdiction over Crompton and Flexsys to be consistent with the requirements of due process. Crompton and Flexsys appeal the circuit court's ruling.

## STANDARD OF REVIEW

[¶ 7.]Upon review this Court will not disturb findings of fact "unless the court is firmly and definitely convinced a mistake has been made." *Denver Truck & Trailer Sales, Inc. v. Design and Building Servs. Inc.*, 2002 SD 127, ¶ 7, 653 N.W.2d 88, 90 (citations and internal quotation marks omitted). Conclusions of law, however, are given no deference and are reviewed de novo. *Id.*

## ISSUE

[¶ 8.] **Did the circuit court err in denying the motion to dismiss the claims against Crompton and Flexsys for lack of personal jurisdiction?**

[¶ 9.] As established by this Court,

> The inquiry into whether a court may assert personal jurisdiction over a nonresident defendant is two-fold. First, the court must determine whether the legislature granted the state court jurisdiction over defendants who do not meet the traditional bases for personal jurisdiction. In South Dakota, this legislative approval is found in the state's Long Arm Statute. Next, the court must determine whether the proposed assertion of jurisdiction comports with federal due process requirements.

*Denver Truck*, 2002 SD 127, ¶ 9, 653 N.W.2d at 91. In this case, Crompton and Flexsys concede that personal jurisdiction is appropriate under South Dakota's Long Arm Statute. Thus, the only issue here is whether jurisdiction over the defendants violates federal due process requirements. Before we proceed to the analysis of this issue, we first set forth the case law of the United States Supreme Court concerning due process requirements for the exercise of personal jurisdiction and our prior decisions interpreting those requirements.

### Federal Due Process Requirements

[¶ 10.] In pertinent part, the Fourteenth Amendment to the United

States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law." US Const amend XIV, § 1. Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). In *International Shoe,* the United States Supreme Court established the minimum contacts test for determining whether personal jurisdiction comports with Fourteenth Amendment due process. 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 95. According to the Court, due process requires that a non-resident defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).[3]

[¶ 11.] Where a suit arises out of a defendant's contacts with a forum, the defendant's activities must be *"purposefully directed"* toward the forum for personal jurisdiction to attach. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d

at 528. (emphasis added). It is not enough that it is foreseeable that a defendant's activities may cause injury in a forum. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). Rather, "the foreseeability that is critical to the due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559, (citations omitted).

[¶ 12.] To satisfy due process foreseeability, a defendant's contacts with the forum must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 528. (citation omitted) (emphasis in original). Thus, the unilateral activity of a third party with some relationship to a nonresident defendant cannot suffice to establish personal jurisdiction. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Instead, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

[¶ 13.] Therefore, a defendant's conduct and connection with a forum must

---

3. Courts often analyze personal jurisdiction by categorizing the issue as either one of general jurisdiction or one of specific jurisdiction. Mary Twitchell, *The Myth of General Jurisdiction,* 101 HarvLRev 610, 611 (1988) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). Specific jurisdiction arises when the suit is "related to or arises out of a defendant's contacts with the forum," whereas general jurisdiction exists when the cause of action does not arise out of or relate to a defendant's activities in the forum, but the defendant has sufficient contact with the forum to satisfy due process.

*Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–15 n. 9, 104 S.Ct. at 1871–72, 80 L.Ed.2d at 404. However, as recognized by one commentator, "[d]uring the nearly two decades since the [United States] Supreme Court recognized a bifurcated doctrine of personal jurisdiction, it has made little progress in defining the characteristics that distinguish general and specific jurisdiction." Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction,* 62 Ohio St LJ 1619, 1619 (2001). We have never specifically adopted or analyzed this jurisdictional dichotomy and we need not do so to decide the present case.

establish "purposeful availment" such that the defendant could reasonably anticipate being haled into that forum's courts. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 490. In *World–Wide Volkswagen*, the United States Supreme Court stated that due process is satisfied when a forum state "asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state," thereby implying that placing a product in the stream of commerce establishes "purposeful availment." *Id.* at 298, 100 S.Ct. 559. In that case, however, the Court found that a plaintiff's unilateral act of bringing the defendant's product into a forum could not establish personal jurisdiction over the defendant, since the defendant had no notice or expectation that its product would end up in that forum. *Id.*

[¶ 14.] Four years later, the Court again considered the "stream of commerce" theory in *Asahi Metal Industry, Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi,* a California resident sued in California state court to recover for injuries he sustained when a tire on his motorcycle exploded. *Id.* at 106, 107 S.Ct. 1026. The plaintiff sued the tire tube manufacturer, a Taiwanese company, who then impleaded the manufacturer of the tube's valve, a Japanese company. *Id.* After the underlying case settled, the Japanese valve manufacturer sought to quash the third-party summons for lack of personal jurisdiction, arguing that it manufactured the tubes only in Japan. *Id.* It was the Taiwanese corporation that incorporated the valves into the tubes in Taiwan and sold the finished tubes throughout the world. *Id.*

[¶ 15.] With split reasoning, the Supreme Court agreed with the Japanese company and found that due process prevented the company from being haled into court in California. *Id.* at 108. The plurality opinion, written by Justice O'Connor, promulgated what has become known as the "stream of commerce plus" standard, which provides that:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*Id.* at 112, 107 S.Ct. 1026. In concurrence, Justice Brennan determined that due process required no such additional conduct. *Id.* at 117, 107 S.Ct. 1026. Brennan reasoned that "[a] defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity ... regardless of whether the participant directly conducts business in the forum State, or engages in additional conduct directed toward that State." *Id.* No matter what reasoning they employed, all the justices agreed that personal jurisdiction over the Japanese corporation violated due

process. *Id.* at 116, 121–22, 107 S.Ct. 1026.

[¶ 16.] However, a finding that a defendant purposefully directed its activities toward the forum does not end the inquiry. Additional factors must be considered to determine whether personal jurisdiction comports with "fair play and substantial justice." *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184, 85 L.Ed.2d at 528. Those factors "include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest in furthering fundamental substantive social policies." *Id.,* at 477, 105 S.Ct. 2174 (citing *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 490).

### South Dakota Case Law

[¶ 17.] This Court has construed the above cases as requiring a three step test to determine whether due process is satisfied to allow the exercise of personal jurisdiction. *See Rothluebbers v. Obee,* 2003 SD 95, ¶ 26, 668 N.W.2d 313, 322. Under that test,

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one.

*Id; Denver Truck,* 2002 SD 127, ¶ 11, 653 N.W.2d at 91; *Opp v. Nieuwsma,* 458 N.W.2d 352, 355–356 (S.D.1990)

[¶ 18.] In *Rothluebbers,* this Court considered whether a tour bus driver and a tour company were subject to personal jurisdiction in South Dakota. *Rothluebbers,* 2003 SD 95, ¶ 2, 668 N.W.2d at 316. In that case, the driver and company were operating a tour from Chicago to Salt Lake City. *Id.* When the tour bus traveled through South Dakota it was involved in an accident and the passengers on the tour bus were injured. *Id.* ¶ 2–3. This Court found that personal jurisdiction attached to the driver and the company and, therefore, the exercise of jurisdiction was consistent with the requirements of due process. *Id.* ¶ 30. Specifically, we stated that:

> [The driver and the company] were not mere tour novices. There is evidence in the record that this was not the first tour that they conducted through the Midwest. It also was not mere happenstance that [the driver and the company] operated in South Dakota. The group had two planned South Dakota stops. In light of these facts, the trial court did not err in determining [the driver and the company] purposefully availed themselves to the laws of South Dakota and as a result it was foreseeable that they could be 'hauled into court' in South Dakota.

*Id.* ¶ 29.

[¶ 19.] There exists no South Dakota case where this Court has specifically analyzed personal jurisdiction under the "stream of commerce plus" analysis. Instead, *Rothluebbers* merely cited the *Asahi* decision in passing and relied instead on the reasoning of *World Wide Volkswagen. Id.* ¶ 28. However, this Court's decision in *Rothluebbers* noted that the defendants did more than sweep through South Dakota in a stream of commerce. *Id.* ¶¶ 25, 29. Rather, we determined that it was a significant factor that the defendants' conduct was not isolated but they had instead made

calculated decisions to purposefully avail themselves of the privilege of conducting business activities in South Dakota. *Id.* ¶ 29. Thus, by requiring more than the defendants' awareness that the stream of commerce would sweep through South Dakota, this Court's analysis in *Rothluebbers* is more consistent with the "stream of commerce plus" analysis utilized by Justice O'Connor's plurality opinion in *Asahi. See id.* ¶¶ 26–29.

[¶ 20.] In fact, one of our earlier cases, *Miller v. Weber,* 1996 SD 47, 546 N.W.2d 865, confirms this analytical framework. In that case, Miller, a South Dakota resident, purchased cattle from Major, a cattle rancher in New Mexico. *Id.* ¶ 2. The transaction occurred through a buyer in New Mexico and a broker in South Dakota. *Id.* Miller never dealt directly with Major. *Id.* ¶¶ 2–4. In Miller's suit against Major and other parties, this Court upheld the dismissal of Major for lack of personal jurisdiction. *Id.* ¶ 10. In doing so, we noted that had the sale not been completed, Major could not have availed himself of South Dakota's laws. *Id.* Rather, his only recourse would have been against the buyer in New Mexico, the only party with whom he had a contract. *Id.* Further, Major did not direct any activities—solicitations, phone calls, or correspondence—at South Dakota. *Id.* ¶¶ 3–10. He knew the ultimate buyer was from South Dakota, but he "left for someone else's decision the destination for the cattle." *Id.* ¶ 10. While Major inquired about the requirements of shipping the cattle to both states, he arranged only to ship the cattle to Nebraska. *Id.* Therefore, he had no substantial connection with South Dakota and we indicated that personal jurisdiction "would be improper as he could not have reasonably anticipated being brought into court here." *Id.* (citation omitted). With this background, we turn to the facts of the present case.

## ANALYSIS

[¶ 21.] Because of the paucity of their contacts with South Dakota, Crompton and Flexsys argue that personal jurisdiction in this forum violates due process. Frankenfeld argues that personal jurisdiction is justified simply on the basis that Crompton and Flexsys' chemicals are necessary to produce each and every tire sold in South Dakota. Further, Frankenfeld asserts that the alleged price-fixing conspiracy provides the "plus" necessary for the "stream of commerce plus" theory. After a consideration of the federal due process requirements and the three part test established by our previous decisions, we hold that the circumstances here failed to satisfy due process standards and, therefore, the circuit court's determination that personal jurisdiction existed over Crompton and Flexsys was improper.

[¶ 22.] First, applying the analysis from *Asahi, Rothluebbers,* and *Miller,* the facts here established that Crompton and Flexsys did not purposefully avail themselves of the privilege of acting in South Dakota. Rather, their products, like the tube valves in *Asahi,* were incorporated by a third party into a finished product which found its way to South Dakota. At most, Crompton and Flexsys placed their products into a stream of commerce which took them to Tennessee and North Carolina, where they were manufactured into a third party's product (tires) and then injected into the stream of commerce that eventually lead to South Dakota. Further, Crompton and Flexsys did not enter into a contract with anyone in South Dakota. Because no fact suggests that they purposefully availed themselves of the benefits and protections of South Dakota's laws, the first element of proper personal jurisdiction is lacking.

[¶ 23.] Additionally, the alleged price-fixing conspiracy by the defendants did not render personal jurisdiction appropriate. While Frankenfeld argues that such a conspiracy provided the "plus" necessary under the "stream of commerce plus" theory, the cases cited for that proposition are all readily distinguishable from the facts here. In those cases, the products subject to price fixing were actually sold to the plaintiffs who were residents of the forum state. *See Execu–Tech Business Systems, Inc. v. New Oji Paper Co.*, 752 So.2d 582, 583 (Fla.2000) (thermal fax paper); *St. Joe Paper Co. v. Superior Court*, 120 Cal.App.3d 991, 175 Cal.Rptr. 94, 96 (1981). Comparatively, Frankenfeld did not purchase the chemicals produced by Crompton and Flexsys, he purchased tires that allegedly contained some of those chemicals. We decline to hold that a criminal violation in another state automatically satisfies the minimum contacts requirement. *See Execu–Tech*, 752 So.2d at 585–86. In our opinion, the federal due process standards require more.

[¶ 24.] Moreover, even under Justice Brennan's analysis in *Asahi* and the "stream of commerce" test announced by *World–Wide Volkswagen*, personal jurisdiction over the defendants would offend due process. Crompton and Flexsys did not deliver their products into the stream of commerce with the expectation that they would be purchased by consumers in South Dakota. In fact, their product was not purchased by anyone, consumer or

company, in South Dakota. Rather, third parties incorporated Crompton's and Flexsys' chemicals into an entirely different product, which those third parties then sent to South Dakota. Crompton's and Flexsys' products were not purchased in South Dakota, nor were they purchased by a resident of South Dakota. *Compare Russell v. Balcom Chems., Inc.*, 328 N.W.2d 476, 479 (S.D.1983) (distinguishing *World Wide Volkswagen* because the product at issue was purchased in South Dakota by a resident of South Dakota).

[¶ 25.] Just like the defendant in *Miller,* the defendants here had no direct contact with Frankenfeld or anyone else in South Dakota. *See Miller,* 1996 SD 47, ¶ 10, 546 N.W.2d at 868. As *World Wide Volkswagen* recognized, due process prevents personal jurisdiction based on the unilateral activity of a third party. Because Crompton and Flexsys did not act to purposefully avail themselves of the laws and benefits of South Dakota, the exercise of personal jurisdiction over these defendants would violate due process.

[¶ 26.] Second, no facts here indicate that Crompton and Flexsys directed their activities toward South Dakota.[4] Unlike our cases upholding personal jurisdiction, Crompton and Flexsys did not plan to use South Dakota for their economic gain, *Rothluebbers,* 2003 SD 95, ¶ 29, 668 N.W.2d at 323, they did not instruct that their products be delivered to South Dakota, *Opp,* 458 N.W.2d at 356, they did not

---

4. Frankenfeld also maintains that Crompton and Flexsys have global informational websites which could be significant in establishing the necessary minimum contacts with South Dakota. This point was not factually developed in the record to the extent that we can offer an opinion on the impact of these websites in satisfying the minimum contacts requirement. The cases and commentary which have arisen regarding the establishment of minimum contacts by websites have

identified a distinction between websites which actively solicit business in the forum state and those which are merely informational in their nature and purpose. The law on this issue is far from settled. *See Bensusan Rest. Corp. v. King,* 937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir. 1997); Kendrick D. Nguyen, Note, *Redefining the Threshold for Personal Jurisdiction: Contact and the Presumption of Fairness,* 83 BUL Rev 253, 267–71 (2003).

sell their products in South Dakota, *Russell*, 328 N.W.2d at 479, and they had no continuing obligation to residents of South Dakota, *State v. American Bankers Insurance Co.*, 374 N.W.2d 609, 613 (S.D.1985). On the other hand, we found that no personal jurisdiction existed in *Miller*, even when the defendant knew the ultimate buyer lived in South Dakota. *Miller*, 1996 SD 47, ¶¶ 3, 10, 546 N.W.2d at 866, 868. Crompton and Flexsys were not serving a market for chemicals in South Dakota either directly—selling their products here—or indirectly—by selling to distributors who distribute the product here. No such market exists. Thus, it cannot be said that Crompton and Flexsys directed activities toward our state.

[¶ 27.] Finally, the acts of the defendants must have a substantial connection with the forum state to make the exercise of jurisdiction over them a reasonable one. As we have noted, an important factor bearing on the reasonableness of asserting jurisdiction is whether a defendant's conduct and connection with South Dakota are such that he would reasonably anticipate being haled into court here. *Opp*, 458 N.W.2d at 355–56 (citing *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 490). In this case, as in *Miller*, the defendants arranged only to ship their product to another state. *See Miller*, 1996 SD 47, ¶ 10, 546 N.W.2d at 868. The facts indicated nothing more than an extremely attenuated connection between Crompton and Flexsys' conduct and South Dakota, a connection so distant that Crompton and Flexsys could not have reasonably anticipated being subject to our jurisdiction. While we recognize "the trend to expand the states' powers to impose jurisdiction over nonresidents," *Russell*, 328 N.W.2d at 479, doing so in circumstances such as this would open South Dakota's courts to suits only tangentially related to South Dakota, suits in which our state has only a minimal interest. Jurisdiction over Crompton and Flexsys, therefore, is not reasonable.

## CONCLUSION

[¶ 28.] Crompton and Flexsys sold their chemical products to third parties who incorporated those chemicals in tires eventually sold to consumers in South Dakota. No facts indicated that they expected their chemicals to end up in South Dakota nor had they engaged in any action directed at South Dakota. The connections between our state and Crompton and Flexsys are not only minimal, they are extremely attenuated. Thus, the exercise of personal jurisdiction over the defendants would violate due process.

[¶ 29.] The circuit court is reversed.

[¶ 30.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 31.] KEAN, Circuit Judge, for SABERS, Justice, disqualified.