#24218-a-DG

**2007 SD 125**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT MARSCHKE,                                    Plaintiff and Appellant,

  v.

NATHAN J. WRATISLAW,
Individually and d/b/a MONTANA
MUSCLE and CLASSICS, LLC,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JANINE KERN
Judge

\* \* \* \*

MURL L. WOODS
Rapid City, South Dakota                         Attorney for plaintiff
  and appellant.


QUENTIN L. RIGGINS
PAMELA SNYDER-VARNS of
Gunderson, Palmer, Goodsell and Nelson
Rapid City, South Dakota                         Attorneys for defendant
  and appellee.

\* \* \* \*

ARGUED OCTOBER 2, 2007

OPINION FILED **12/05/07**

#24218

GILBERTSON, Chief Justice

[¶1.] On January 24, 2006, Robert Marschke (Marschke) filed a summons and complaint against Nathan J. Wratislaw, individually and d/b/a Montana Muscle and Classics, LLC (Montana Muscle) (collectively "Wratislaw"), in the South Dakota Seventh Judicial Circuit. On April 24, 2006, Wratislaw filed a motion to dismiss for lack of personal jurisdiction pursuant to SDCL 15-6-12(b). The circuit court granted Wratislaw's motion to dismiss. We affirm.

**FACTS AND PROCEDURE**

[¶2.] The following factual account is undisputed by the parties. Marschke is a resident of Pennington County, South Dakota. Wratislaw is a resident of Stevensville, Montana. Montana Muscle is a Montana LLC licensed to sell used cars. Wratislaw is the managing member of Montana Muscle.

[¶3.] Marschke sought to purchase a car like the one he had owned during his youth, a Fiat 850 Spyder. Looking for the car, he searched the Internet auction site eBay.com (eBay) in April 2005. On the site, Marschke found a 1971 Fiat at auction that was owned by Wratislaw. Marschke again visited eBay in May 2005 and found that the car was still posted for sale. Wratislaw's Montana Muscle and Classics Website was linked to the eBay posting and his toll free telephone number was also displayed on the auction page for the 1971 Fiat. At no time did Marschke

place a bid for the vehicle on eBay.[1]  Instead, while Marschke was on a business trip in Illinois, he called Wratislaw's toll free number to discuss the vehicle.[2]

[¶4.]        Marschke talked to Wratislaw by phone on at least two occasions; finally, offering to purchase the 1971 Fiat for $3,300.00, which Wratislaw accepted. On May 18, 2005, Wratislaw's office manager sent Marschke an e-mail requesting his full name, address and telephone numbers so that a purchase agreement could be prepared and mailed to him.  On May 20, Marschke arranged for a friend to wire-transfer $500.00, for the down payment, from her Wisconsin bank account to Wratislaw's bank account in Montana.  On May 26, after his return to South Dakota, Marschke wire-transferred Wratislaw the balance of the purchase price. Wratislaw mailed an unsigned purchase agreement to Marschke, which he signed in South Dakota on June 4, 2005 and mailed back to Wratislaw.[3]  Wratislaw then executed the agreement at the office of Montana Muscle in Stevensville, Montana.

[¶5.]        Thereafter, Wratislaw referred Marschke to a motor carrier, Western Automotive Transport, with whom Marschke made arrangements to transport the vehicle from Stevensville to Billings, Montana.  Marschke executed a transport agreement with Western Automotive and paid for the cost with his credit card.

---

1.    On his eBay posting for the 1971 Fiat, Wratislaw notified potential bidders that he would not accept bids from bidders without prior bidding history unless they first called him.  Marschke had no prior eBay bidding history.

2.    In his affidavit in support of his reply to defendant's motion to dismiss, Marschke states that during this initial phone call he informed Wratislaw that he was from South Dakota.

3.    From the record it is not evident whether Marschke received the purchase agreement before or after his payment in full was wired to Wratislaw.

After arriving in Billings, Montana, the vehicle was then towed to Rapid City, South Dakota by Tom Renner, Marschke's employer, who had agreed to bring the vehicle back to South Dakota since he was in Billings on business.

[¶6.] Once Marschke took possession of the vehicle in South Dakota, he decided that it was not in the condition that he expected. After failing to obtain satisfaction from Wratislaw, Marschke filed his summons and complaint in Pennington County, South Dakota, on January 24, 2006. On February 9, Wratislaw received service of process at his place of business in Stevensville, Montana. On April 24, Wratislaw filed a motion to dismiss for lack of personal jurisdiction under SDCL 15-6-12(b)(2) and insufficient service of process under SDCL 15-6-12(b)(4).[4] The motion was heard on June 30, 2006; at which time the circuit court granted Wratislaw's motion to dismiss for lack of personal jurisdiction.

[¶7.] Marschke appeals raising the following issue:

> Whether the circuit court erred in granting Wratislaw's motion to dismiss for lack of personal jurisdiction.

## STANDARD OF REVIEW

[¶8.] Issues pertaining to a circuit court's jurisdiction are questions of law that we review under the de novo standard. Grajczyk v. Tasca, 2006 SD 55, ¶8, 717 NW2d 624, 627 (citing State *ex rel* LeCompte v. Keckler, 2001 SD 68, ¶6, 628 NW2d 749, 752) (citations omitted)). In Guthmiller v. Deloitte & Touche, LLP, 2005 SD 77, 699 NW2d 493, we discussed the proper standard of review for a motion to dismiss under SDCL 15-6-12(b):

---

4. Wratislaw later withdrew his motion as to insufficient service of process.

> A motion to dismiss under SDCL 15-6-12(b) tests the legal
> sufficiency of the pleading, not the facts which support
> it. For purposes of the pleading, the court must treat as
> true all facts properly pled in the complaint and resolve
> all doubts in favor of the pleader. "Our standard of review
> of a [circuit] court's grant or denial of a motion to dismiss
> is the same as our review of a motion for summary judgment
> – is the pleader entitled to judgment as a matter of law?"
> Thus, all reasonable inferences of fact must be drawn in
> favor of the non-moving party and we give no deference
> to the [circuit] court's conclusions of law.

*Id*. ¶4, 699 NW2d at 496 (quoting Vitek v. Bon Homme County Bd. of Com'rs, 2002 SD 100, ¶7, 650 NW2d 513, 516) (internal citations omitted)).

[¶9.] The only evidence submitted to the circuit court in this case consisted of documentary evidence, including affidavits and declarations. "We review a [circuit] court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party." Daktronics, Inc. v. LBW Tech Co., Inc., 2007 SD 80, ¶3, 737 NW2d 413, 416 (citations omitted).

## ANALYSIS AND DECISION

[¶10.] **Whether the circuit court erred in granting Wratislaw's motion to dismiss for lack of personal jurisdiction.**

[¶11.] Marschke argues that Wratislaw's use of the Internet to sell the 1971 Fiat 850 Spyder and the negotiation, contracting for the sale, payment and other related activities that occurred beyond the boundaries of Montana and involved a South Dakota resident, supply the underpinning for the circuit court's personal jurisdiction over Wratislaw in this matter.

[¶12.] The venerable United States Supreme Court cases, *International Shoe Co. v. State of Wash., Office of Unemployment*, 326 US 310, 66 SCt 154, 90 LEd 95 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 104 SCt

1868, 80 LEd2d 404 (1984); and *Burger King Corp. v. Rudzewicz*, 471 US 462, 105 SCt 2174, 85 LE2d 528 (1985), can be read together to construe two types of personal jurisdiction – general and specific.  A court asserts general jurisdiction over a nonresident defendant when he has continuous activities in the forum and the activities are substantial enough to make reasonable the court's jurisdiction over him for a cause of action unrelated to those activities.  *Int'l Shoe Co.*, 326 US at 317, 66 SCt at 159, 90 LEd 95 (citations omitted); *Helicopteros*, 466 US at 414-15, 104 SCt at 1872, 80 LEd2d 404 (citation omitted); *Burger King Corp.*, 471 US at 475-76, 105 SCt at 2184, 85 LE2d 528 (citations omitted).  Where the nonresident defendant does not have continuous contact with the forum, but only sporadic activity or an isolated act, a court is said to assert specific jurisdiction over him when it asserts such jurisdiction in relation to a cause of action arising out of the activity or act.  *Int'l Shoe Co.*, 326 US at 317, 66 SCt at 159, 90 LEd 95 (citations omitted); *Helicopteros*, 466 US at 414 n8, 104 SCt at 1872 n8, 80 LEd2d 404 (citation omitted); *Burger King Corp.*, 471 US at 476 n18, 105 SCt at 2184 n18, 85 LE2d 528 (citation omitted).  In this case we consider whether the circuit court erred in its determination not to assert specific jurisdiction over Wratislaw with respect to the subject matter at issue.

[¶13.]     We initially make a two-fold inquiry into whether a circuit court may assert personal jurisdiction over a nonresident defendant:

> First, the court must determine whether the legislature granted the state court jurisdiction over defendants who do not meet the traditional bases for personal jurisdiction. In South Dakota, this legislative approval is found in the

> state's Long Arm Statute.[5] . . . Next, the court must determine whether the proposed assertion of jurisdiction comports with federal due process requirements.

*Denver Truck and Trailer Sales, Inc. v. Design and Bldg. Services, Inc.*, 2002 SD 127, ¶9, 653 NW2d 88, 91. In this case, Wratislaw concedes the circuit court's jurisdiction under our "Long Arm Statute." Thus, our analysis need only consider whether assertion of personal jurisdiction over this matter is consistent with Wratislaw's 14th Amendment right to due process.

[¶14.] The due process inquiry requires determining whether a non-resident defendant had sufficient minimum contacts with the forum, such that assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Daktronics*, 2007 SD 80, ¶5, 737 NW2d 413, 416 (quoting *Int'l Shoe Co.*, 326 US at 316, 66 SCt at 158, 90 LEd 95 (citations omitted)). There must also be some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. *Id.* (citing *Burger King Corp.*, 471 US at 475, 105 SCt at 2183, 85 LEd2d 528 (quotation omitted)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a court of the forum solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. . . ." *Id.* (quoting *Burger King Corp.*, 471 US at 475, 105 SCt at 2183, 85 LEd2d 528 (quotation omitted)). Moreover, the defendant's conduct and connection with the forum must be such that he could reasonably anticipate being haled into a forum court. *Id.* ¶5, 737 NW2d at

---

5. The provisions of South Dakota's "Long Arm Statute" are codified under SDCL 15-7-2.

417 (citing World-Wide Volkswagen Corp. v. Woodson, 444 US 286, 297, 100 SCt 559, 567, 62 LEd2d 490 (1980) (citations omitted)).

[¶15.]    Interpreting United States Supreme Court precedent regarding the due process requirements, we apply a three-step test to determine whether sufficient minimum contacts exist. *Id.* ¶6 (citing Frankenfeld v. Crompton Corp., 2005 SD 55, ¶17, 697 NW2d 378, 384 (citing Rothluebbers v. Obee, 2003 SD 95, ¶26, 668 NW2d 313, 322)).  Under this test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws.  Second, the cause of action must arise from [the] defendant's activities directed at the forum state.  Finally, the acts of [the] defendant must have substantial connection with the forum state to make the exercise of jurisdiction over [the] defendant a reasonable one.

*Id.* (citing *Frankenfeld*, 2005 SD 55, ¶17, 697 NW2d 378, 384 (citing *Rothluebbers,* 2003 SD 95, ¶26, 668 NW2d at 322; *Denver Truck,* 2002 SD 127, ¶11, 653 NW2d at 91; Opp v. Nieuwsma, 458 NW2d 352, 355-56 (SD 1990))).[6]

---

6.    This Court has not previously addressed a nonresident defendant's utilization of the Internet as a basis for establishing personal jurisdiction.  As the actual sale in this case did not take place on the Internet we leave for another day a resolution of that issue.  We do so as we are to reject "any talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.,* 471 US at 485-86, 105 SCt at 2189, 85 LEd2d 528 (citation omitted).  Since the solicitation did take place on the Internet, we acknowledge the evolution of that medium.  In some jurisdictions that has led to a different type of analysis noted below.  However, other jurisdictions have rejected this different type of analysis concluding that traditional due process analysis such as is found in *Burger King Corp.* is sufficient for internet transactions.

(continued . . .)

---

(. . . continued)

Albeit for different reasons, both Marschke and Wratislaw direct us to the opinion of the United States District Court for the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 FSupp 1119 (WDPa 1997), for a rationale under which to determine whether a nonresident defendant's particular use of the Internet constitutes a basis for personal jurisdiction consistent with due process. Recognizing a looming "global revolution" due to the ability through the Internet to conduct business worldwide from a desktop, and that the law in the area of determining jurisdiction over such activities was in its infancy, the court in *Zippo Mfg. Co.* set out to establish a standard by which jurisdictional determinations could be made. *Id*. at 1123. Opining that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet," *id*. at 1124, the court articulated a "sliding scale" as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g.* CompuServe, Inc. v. Patterson, 89 F3d 1257 (6thCir 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g.* Bensusan Restaurant Corp., v. King, 937 FSupp 295 (SDNY 1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g.* Maritz, Inc. v. Cybergold, Inc., 947 FSupp 1328 (EDMo 1996).

*Id*.

We observe that specialized tests have been adopted in an attempt to place manageable limits on a state's reach over use of the Internet by nonresident defendants and that the "sliding scale" enunciated in *Zippo Mfg. Co.* is the most prevalent of these tests. Fenn v. Mleads Enterprises, Inc., 137 P3d 706, 712 n15 (Utah 2006); Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297

(continued . . .)

[¶16.]     Clearly, the existence of a contract is not dispositive of the issue. The fact that Marschke signed the contract in South Dakota does not by itself carry the day for him. In addressing this issue, the United States Supreme Court in *Burger King Corp.*, stated:

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, *International Shoe Co* [ ], 326 US at 319, 66 SCt at 159, [90 LEd 95], or on "conceptualistic . . . theories of the place of contracting or of performance." Hoopeston Canning Co v. Cullen, 318 US [313], 316, 63 SCt [602], 604, [87 LEd 777]. Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* at 316-317, 63 SCt at 604-05, [87 LEd 777].

*Id.* at 478-479, 105 SCt at 2185, 85 LEd2d 528 (emphasis original).

[¶17.]     We first turn to Wratislaw's use of the Internet as a medium for advertising his business and the sale of the 1971 Fiat. Wratislaw maintained a Website under the name "www.smoothrides.com" through which he advertised his

---

(. . . continued)

FSupp2d 1154, 1159 (WDWis 2004); Wisconsin Inv. Bd. v. Schraeder, No. 03-CV-62, 2004 WL 1146448 at *5 (WisCir Feb 9, 2004). The United States Court of Appeals, Eighth Circuit also discussed this issue in *Lakin v. Prudential Securities*, 348 F3d 704 (8thCir 2003). In comments ancillary to its holding, in which it found the *Zippo* standard insufficient for the analysis of the general jurisdiction issue in that case, *id.* at 711, the court expressed an opinion that the *Zippo* standard could be applied to Internet cases involving questions of specific jurisdiction. *Id.*

business, Montana Muscle. When he posted the 1971 Fiat for sale on eBay, he included his toll-free telephone number and link to his Website.[7]

[¶18.] Since Marschke did not buy the vehicle through eBay or bid on it through the Internet auction, Wratislaw's use of eBay in this case constitutes no more than an extension, via Web link, of his own advertisement Website. We determine that any contact created through the use of the Internet as an *advertising* medium is attenuated. Wratislaw's use of the Internet in this case was no different than posting a vehicle for sale, with a telephone number, in *Deals on Wheels* (*see Ochs v. Nelson*, 538 NW2d 527 (SD 1995) *for a description of the print advertising medium*) and we have never held that such a single act, by itself, constitutes a basis for asserting personal jurisdiction.

[¶19.] Finally, Marschke argues that the negotiations that occurred between Wratislaw and him, Wratislaw's mailing of the unsigned contract to South Dakota for Marschke's signature, and the manner in which payment was conveyed to Wratislaw constitute sufficient minimum contacts. The cause of action clearly arises out of Wratislaw's sale of the 1971 Fiat to Marschke and we will assume *arguendo* that Wratislaw directed the sale at South Dakota.[8] As we previously

---

7. In his affidavit in support of his motion to dismiss, Wratislaw acknowledged that on occasion he had posted cars for sale on eBay. He also stated that there was no method or design by which the decision to post on eBay was made. He said that sometimes a car would be posted when it had been on his lot too long.

8. We make this assumption *arguendo* because it could also be argued that Wratislaw directed *no* activity at South Dakota. Marschke initiated contact with Wratislaw by directing at least two phone calls to his place of business in Montana. One could argue that an enforceable contract for sale of the

(continued . . .)

noted, the United States Supreme Court has held that a contract with a nonresident party is not alone sufficient to establish minimum contacts. *See supra* ¶16 (quoting *Burger King Corp.*, 471 US at 478, 105 SCt at 2185, 85 LEd2d 528). Thus, in applying the third step in our test we must determine if the sum total of the rest of Wratislaw's acts when added to the contract constitute sufficient minimum contacts. In that respect, we think it is useful to compare the circumstances in this case to those underlying our recent decision in *Daktronics*, where we concluded there were sufficient minimum contacts.

[¶20.]     The California defendant entered into a three-year consulting contract with a South Dakota corporation for the purpose of assisting the corporation's effort to secure oversees contracts. *Daktronics*, 2007 SD 80, ¶¶1, 9, 737 NW2d at 415-16, 417. Prior to the agreement, the defendant made telephone calls and sent e-mails and faxes to South Dakota. *Id*. ¶9, 737 NW2d at 417. The defendant visited the corporation's headquarters in South Dakota at the corporation's expense. There, the two parties discussed the potential business venture. After her South Dakota visit, the defendant directed more communications to the corporation in South Dakota. Once the agreement was finalized, the defendant directed status reports and requests for reimbursement to South Dakota. Payments for services and

---

(. . . continued)

1971 Fiat was formed when Marschke directed his $3,300.00 payment to Wratislaw's bank account in Montana, where Wratislaw accepted it. *See* SDCL 57A-2-201(3)(c) (Statute of Frauds). It could then be argued that after consummating the sale, Wratislaw directed the 1971 Fiat from one end of his Montana car lot to the other, where Marschke's shipping agent took possession of the vehicle for eventual transport to South Dakota.

reimbursements were sent to the defendant from South Dakota. The crux of disputed facts in the case centered on which party initiated contact or first solicited the other's business. *Id.* ¶10, 737 NW2d at 417.

[¶21.] In the instant case, after Marschke discovered the 1971 Fiat on eBay, he contacted Wratislaw by telephone on at least two occasions to arrange terms of sale. Wratislaw sent an e-mail to Marschke to obtain his full name and mailing address. Marschke then arranged for the purchase price to be wire-transferred to Wratislaw's bank account in Montana. Wratislaw mailed an unsigned contract to Marschke; after which Marschke signed and returned it to Wratislaw, who in turn signed it in Montana. Finally, after receiving the name of a motor carrier from Wratislaw, Marschke paid for and made his own arrangements for transporting the vehicle to South Dakota. *See* Miller v. Weber, 1996 SD 47, ¶10, 546 NW2d 865, 868 (considering it to be a factor that the defendant did not arrange to ship cattle to South Dakota in a case where we determined that minimum contacts were lacking).

[¶22.] We found the opinion of the United States Court of Appeals for the Third Circuit in *General Electric Co. v. Deutz AG*, 270 F3d 144 (3rdCir 2001), to be relevant to our decision in *Daktronics* and again find it relevant in the instant case. The court stated:

> *Specific jurisdiction frequently depends on physical contacts with the forum.* Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination. Remick v. Manfredy, 238 F3d 248, 255-56 (3dCir 2001); [Mellon Bank (East) PSFS, Nat. Ass'n v.] Farino, 960 F2d [1217], 1223-24 [(3rdCir 1992)]. In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule. *Where . . . long-term relationships*

> *have been established, actual territorial presence becomes less determinative. Burger King [Corp.], 471 US at 476, 105 SCt 2174, [85 LEd2d 528].*

*Id.* at 150-51 (emphasis added). The court also went on to state that, as a factor, the length of the venture the parties seek to enter outweighs consideration of which party initiated the relationship. *Id.* at 151 (citing Carteret Sav. Bank, FA v. Shushan, 954 F2d 141, 150 (3dCir 1992).

[¶23.] Marschke relies heavily upon the case of *Aero Toy Store v. Grieves*, 631 SE2d 734 (2006). Therein, the plaintiff, a resident of Georgia, conducted an extensive internet correspondence with a car dealership in Florida over a BMW that was up for auction on e-Bay. *Id.* at 735. Based on this correspondence, the plaintiff was the successful high bidder. Thereafter, the defendant shipped the car to the plaintiff in Georgia. *Id.* at 736. In finding sufficient minimum contacts to maintain the action in Georgia, the court noted that the seller had regularly solicited business in Georgia through the Internet and derived substantial revenue of at least $193,199 from sales to that state. Also, previously at least 11 individuals from Georgia had submitted the high bid on defendant's e-Bay internet auctions.

[¶24.] Unlike in *Daktronics*, there was no long-term relationship between Marschke and Wratislaw. Moreover, unlike *Aero Toy,* the sum total of Wratislaw's transactions in South Dakota could be characterized as a "one shot deal" — the sale to Marschke. Therefore, that Wratislaw had no physical contact with South Dakota before, during or after the period relevant to the sale of the 1971 Fiat, is a factor that we consider. In the context of this "one shot deal," we also find it pertinent that Marschke initiated the telephone calls and negotiations leading to the

$3,300.00 purchase with Wratislaw. That Wratislaw sent a solitary e-mail into Cyberspace to obtain Marschke's contact information so that the unsigned contract could be mailed to him in South Dakota does not constitute a significant contact among these facts. Apart from the fact that there was a purchase agreement between Marschke and Wratislaw, the direction that it was sent and the manner in which Wratislaw received payment do not constitute significant factors in our determination.

[¶25.]     Wratislaw was not incorporated, headquartered or licensed to do business in South Dakota. *See Frankenfeld*, 2005 SD 55, ¶5, 697 NW2d at 381 (citing that the same factors were absent in a case where minimum contacts were lacking). Neither did he maintain an office or employees in South Dakota. *See id.* He did not own real estate or maintain bank accounts here. *See id.* He did not manufacture, distribute or sell products within the state,[9] and in this case neither did he make delivery of any sale item to South Dakota. *See id.* In short, Wratislaw had no presence in South Dakota and his only connection with the state was through one isolated sale of a 1971 Fiat 850 Spyder to Marschke. *See id.*

[¶26.]     Analysis of the alleged contacts between Wratislaw and South Dakota, including his use of the Internet in this case, do not alone or taken together support any contention of the existence of sufficient minimum contacts to support personal jurisdiction.

[¶27.]     Affirmed.

---

9.     Wratislaw states in his affidavit that to the best of his knowledge he had never before sold a vehicle to anyone in South Dakota.

#24218

[¶28.]      SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices,

concur.